**Constance Ann ANDERSON et al.,**
**Plaintiffs,**

v.

**SAN FRANCISCO UNIFIED SCHOOL**
**DISTRICT et al., Defendants.**

**No. C–72–367 SC.**

United States District Court,
N. D. California.

Oct. 30, 1972.

---

Jacobs, Blanckenburg, May & Colvin, San Francisco, Cal., for plaintiffs.

Thomas O'Connor, City Atty., San Francisco, Cal., for defendants.

## OPINION, FINDINGS OF FACT AND CONCLUSIONS OF LAW

CONTI, District Judge.

This cause came on regularly for trial before the court, sitting without a jury, on October 24, 1972, and the court having heard the testimony and having examined the proofs offered by the respective parties and the cause having been submitted, the court being fully advised in the premises, is of the following opinion and makes its Findings of Fact as follows:

The key issue in this case is whether or not a classification which is based on race is valid. Preferential treatment under the guise of "affirmative action" is the imposition of one form of racial discrimination in place of another. The questions that must be asked in this regard are: must an individual sacrifice his right to be judged on his own merit by accepting discrimination based solely on the color of his skin? How can we achieve the goal of equal opportunity for all if, in the process, we deny equal opportunity to some?

The same procedure used in this case with its meritorious goal, can be used by another school district (if left to stand) against the very same groups it strives to help herein.

No one race or ethnic group should ever be accorded preferential

treatment over another. No race or ethnic group should ever be granted privileges or prerogatives not given to every other race. There is no place for race or ethnic groupings in America. Only in individual accomplishment can equality be achieved.

Thus, any classification based on race is suspect. Such classifications have been allowed by the courts, but *only to correct* past discriminatory practices. In the instant case there has been no showing that the classifications and discriminations on the basis of race to be put into effect by the defendant school district, are to be undertaken to correct past discrimination.

No authority presently exists to uphold a practice which discriminates on racial or ethnic lines which is not being implemented to correct a prior discriminatory situation.

In the present case, since there is only a limited number of positions available and a vast oversupply of eligible candidates, the racial and ethnic quota promotion system, based on is own arithmetic, necessarily deprives non-minority individuals of equal opportunity.

1. Jurisdiction of this court was invoked pursuant to 28 U.S.C. § 1343(3), § 1343(4) and 28 U.S.C. § 2201. The jurisdiction of this court was invoked to secure protection of civil rights and to redress deprivation of rights, privileges and immunities secured by (a) the Fourteenth Amendment to the Constitution of the United States; (b) 42 U.S.C. § 1981 and 42 U.S.C. § 1983; and (c) 42 U.S.C. § 2000d.

2. The plaintiffs named herein are citizens of the United States and residents of the Northern District of California.

3. The plaintiffs named herein are representatives of an appropriate class as defined in Rule 23(a) of the Federal Rules of Civil Procedure and have brought this action on behalf of themselves and the entire class, pursuant to said Rule. The class which plaintiffs represent is composed of certificated administrative employees and teachers employed by defendant San Francisco Unified School District who are Caucasian, who do not have a Spanish surname, and who are classified by defendant San Francisco Unified School District as "Other White". The class consists of approximately 4,000 members and is thus so numerous that joinder of all members is impossible. There are questions of law and fact common to the class. The claims of the representative parties are typical of the claims of the class and the representatives will fairly and adequately protect the interests of the class. Adjudication of the claims of the representative parties will as a practical matter be dispositive of the interests of other members of the class who are not parties to the adjudication. The defendants herein have acted or refused to act on grounds generally applicable to the class, thereby making declaratory, injunctive or other affirmative relief appropriate to the class as a whole.

4. Defendant San Francisco Unified School District ("School District") is a political subdivision of the State of California authorized to establish, maintain and operate the public school system for the primary and secondary levels in the City and County of San Francisco. Defendant School District is the recipient of funds for programs and activities receiving Federal financial assistance within the meaning of 42 U.S.C. § 2000d.

5. Defendant Board of Education of the San Francisco Unified School District ("Board of Education") is the duly created and authorized governing body of the defendant School District; the present members of defendant Board of Education are defendants George Y. Chinn, Eugene S. Hopp, David Sanchez, Lee S. Dolson, Charlie Mae Haynes, Lucille Abrahamson and John A. Kidder; defendants George Y. Chinn, Eugene S. Hopp and David Sanchez were original defendants in this action, sued in their official capacity; defendants Lee S. Dolson, Charlie Mae Haynes, Lucille Abrahamson and John A. Kidder by stipula-

tion have been substituted as defendants, sued in their official capacity, for John Crowley, Zuretti L. Goosby, Mrs. Ernest R. Lilienthal and Howard Nemerovski, who were members of the Board of Education at the time of the filing of the suit and were sued in their official capacity.

6. Defendant Steven P. Morena is the Superintendent of Schools of the defendant School District; by stipulation he was substituted as a defendant, sued in his official capacity, in the place of the original defendant Thomas A. Shaheen, who at the time of the filing of the complaint was the Superintendent of Schools for defendant School District; each of the two said defendants with respect to all of the matters herein alleged was acting as the agent and employee of the defendant School District and the defendant Board of Education.

7. In March 1968, defendant Board of Education adopted an Affirmative Action Policy (P4110), which provides in part:

"It is the policy of the Board of Education to implement a program of faculty racial and ethnic balance which more closely approximates the racial and ethnic distribution of the total school population so long as such efforts maintain or improve quality of education."

Subsequently, in order to implement this policy, defendant Board of Education directed the Superintendent to develop Administrative Regulations and Procedures for a program of affirmative action in regard to promotional opportunities with the defendant School District as follows:

"A. Promote minority group candidates to administrative and supervisory positions in the Central Office as a means of demonstrating that the affirmative action program has upward movements at all levels.

B. Promote minority group candidates to the following type of position: Principals, Assistant Principals, Deans and Heads of Departments.

1. In schools where there are large numbers of minority group children of the same ethnic background as means of improving the aspirations of the students and communications.

2. In schools where there are large numbers of white children and teachers as a means of offering integrated experiences.

C. Assign minority group applicants to specialized assignments such as Curriculum Assistant, Student Activities, Acting administrative positions, non-teaching assignments at the Central Office and Administrative Internships."

8. On March 4, 1971, defendant Board of Education, as part of a consideration of a program of administrative reorganization resolved to adopt certain recommendations on staffing of the junior and senior High Schools and Elementary Schools. Specific features of this program were to leave unfilled some fifteen then vacant administrative positions and to eliminate up to fifty credentialed positions for the 1971–1972 school year. Former defendant Superintendent Shaheen in implementing this program of reduction in administrative employees, prepared a memorandum listing certain named administrative employees and recommending that they not be re-employed in their positions for the school year commencing July 1, 1971. Former Superintendent Shaheen presented this memorandum to the Board of Education on March 9, 1971.

9. The administrative employees listed in said memorandum (all of whom were classified as "Other White" by defendant School District) were served with notices that it had been recommended that they not be re-employed in their positions for the 1971–1972 school year. Each of them duly requested a hearing pursuant to California Education Code § 13443(b).

10. Paul A. Winton, a Hearing Officer in the Office of Administrative Procedure for the State of California, conducted a hearing on the matter of the

"de-selection" of the named administrative employees, and, on August 10, 1971, pursuant to California Education Code § 13443(c) issued a "Proposed Decision" (OSF–10179) which contained the following findings:

(1) At the time the reduction in services and consequent reduction in administrative personnel were being considered by the Superintendent and staff, it was determined that strict seniority would be followed in "de-selecting" administrators who had been classified as "Other White" and all those administrators in eight other designated minority groups would be exempted from such de-selection process.

(2) In selecting those administrators who would be affected by the de-selection process and those who would be exempt therefrom the prime consideration utilized was that color or national origin, and that little, if any, concern was given to such factors as competence, experience, skill, tenure or other rights of persons so affected.

(3) The statistical evidence did not create an inference that the District had acted in any discriminatory fashion as to race, nationality or ethnic origin in the employment of administrators.

(4) The statistical evidence demonstrated that since 1966 to 1971 there had been a significant increase in the number of minority administrators.

11. The Hearing Officer concluded that the attempt to "de-select" only "Other White" administrators had been based upon unlawful discrimination by race, nationality and ethnic origin and violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983 and 42 U.S.C. § 2000d.

12. Defendant Board of Education on September 16, 1971, abandoned its effort to demote the named administrators.

13. On December 16, 1971, defendant Board of Education adopted a resolution (No. 112–16A7), a true copy of which is marked Exhibit A (F & C) and made a part hereof; said Resolution set forth a series of percentage quotas for the employment of minority persons as administrators.

14. Prior to the adoption of Resolution 112–16A7 on December 16, 1971, the defendant District and the defendant Board of Education vigorously and in good faith undertook programs to increase the number and percentage of minority persons promoted to administrative positions; that these programs included special training and internship programs for such minority persons; that the defendant District initiated a nationwide recruiting program with special emphasis on bringing minority persons into the District both as teachers and as administrators; the defendant District modified its standards and requirements for the appointment of administrators in order to assist minority persons to attain administrative positions; the modification of these standards included a reduction in the experience requirement of the District by eliminating a previously existing "five year rule" as a minimum of experience; that the modification of these standards included reducing the standard of academic attainment by eliminating the requirements for a Master's degree and substituting therefor a requirement of a Master's degree "in process"; that the modification of these standards included the elimination of the requirement of an Administrative Credential by substituting therefor a special credential which depended only upon the commencement of a credential program at the time of appointment; that among the other programs was the revision of the appointment process by appointing to interviewing panels both student and community representatives who were themselves members of ethnic minority groups. That programs and efforts of the District resulted in a very substantial increase in the number and percentage of minority persons employed as adminis-

trators as demonstrated in Findings of Facts 15, 16 and 17 below.

15. The following statistics compiled by defendant School District show a very substantial growth in number and percentage of employment in administrative positions of persons of racial or ethnic minority designation, i. e. those classified within one of the categories other than "Other White", by which the defendant School District classifies its employees. The statistics in the following chart as to the year 1971 were compiled prior to and are for the period in 1971 prior to the adoption of the Resolution 112–16A7.

|      | Minority Group Number | Administrators % of staff |
|------|-----------------------|---------------------------|
| 1966 | 18                    | 6.0%                      |
| 1967 | 21                    | 7.0%                      |
| 1968 | 36                    | 11.0%                     |
| 1969 | 57                    | 16.3%                     |
| 1970 | 60                    | 17.7%                     |
| 1971 | 69                    | 20.7%                     |

16. The following statistics compiled by defendant School District show a very substantial growth in appointments to probationary administrative positions of persons of racial or ethnic minorities, i. e. those classified within one of the categories other than "Other White" by which defendant School District classifies its employees. The compilation is based on date through December 2, 1971, a date prior to the adoption of the Resolution 112–16A7, and the statistics for "1971–1972" are for the period July 1, 1971 through December 2, 1971.

| Year    | Total Appointments | Minority Group | % Minority |
|---------|--------------------|----------------|------------|
| 1968–69 | 61                 | 16             | 26%        |
| 1969–70 | 49                 | 13             | 27%        |
| 1970–71 | 34                 | 15             | 44%        |
| 1971–72 | 28                 | 22             | 79%        |

17. The following statistics by the defendant School District show the growth in appointments to acting administrative positions of persons of racial or ethnic minorities, i. e. those classified within one of the categories other than "Other White" by which defendant School District classifies its employees.

The compilation is based on data through December 2, 1971, a date prior to the adoption of the Resolution 112–16A7 above, and the statistics for "1971–1972" are for the period July 1, 1971 through December 2, 1971.

| Year    | Total Appointments | Minority Group | % Minority |
|---------|--------------------|----------------|------------|
| 1968–69 | 33                 | 13             | 39%        |
| 1969–70 | 48                 | 16             | 33%        |
| 1970–71 | 50                 | 26             | 52%        |
| 1971–72 | 16                 | 10             | 63%        |

18. In order to achieve the percentage quotas set out in Resolution 112–16A7 virtually all administrative assignments, appointments and promotions would have to be granted to minority personnel. Because of budget restrictions, reduced enrollment, the adoption of a "freeze" on administrative appointments by the defendant School District, and the stated intent of the defendants to reduce the number of administrators employed by the defendant School District, a very substantial decrease in the number of annual administrative assignments, appointments and promotions will occur in the period covered by Resolution 112–16A7; if defendants are not restrained from enforcing the percentage quota program instituted by said resolution, virtually no "Other White" employees will be able to be appointed to, or promoted within the administrative ranks of defendant School District for the period covered by the resolution. The practical effect of said resolution is to assign to plaintiffs and those similarly situated, by reason of their race and ethnic origin, little or no opportunity for administrative assignments, appointments and promotions during said period.

19. As a direct and proximate result of the enforcement of said December 16, 1971 Resolution 112–16A7 plaintiffs and those similarly situated are now and will continue to be systematically excluded from promotion, advancement and compensation in their chosen profession solely on the ground of their race or national origin. Plaintiffs, and those sim-

ilarly situated, are now and will continue to be deprived of their right to equal employment opportunities and will continue to be subjected to discrimination on the basis of their race or national origin, unless defendants are restrained from so doing by order of this court.

20. Said December 16, 1971 Resolution 112–16A7 and the enforcement of its policy of racially discriminatory employment practices, deprives plaintiffs of rights secured by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, by 42 U.S.C. § 1983 and by 42 U.S.C. § 2000d.

21. There exists a present controversy between plaintiffs and defendants with respect to the matters hereinbefore set forth.

22. Unless restrained defendants are subjecting and will continue to subject plaintiffs and those similarly situated to great and irreparable injury in that virtually all available appointments, assignments and promotions as administrators will be allotted to other employees upon the basis of discrimination as to race and national origin.

## CONCLUSIONS OF LAW

1. Jurisdiction of this court is properly invoked pursuant to 28 U.S.C. § 1343(3), § 1343(4) and 28 U.S.C. § 2201. The jurisdiction of this court is properly invoked to secure protection of the civil rights of plaintiffs and those similarly situated and to redress deprivation of their rights, privileges and immunities secured by the Fourteenth Amendment to the Constitution of the United States, 42 U.S.C. § 1983 and 42 U.S.C. § 2000d and plaintiffs are entitled to judgment against defendants invoking and declaring the jurisdiction of this court.

■ 2. Plaintiffs named herein are representatives of an appropriate class as defined in Rule 23(a) of the Federal Rules of Civil Procedure and have brought this action on behalf of themselves and the entire class, pursuant to said Rule; that said class is so numerous that joinder of all members is impossible; that there are questions of law and fact common to the class; that the claims of the representative parties are typical of the claims of the class and the representatives will fairly and adequately protect the interests of the class; that adjudication of the claims of the representative parties will as a practical matter be dispositive of the interests of other members of the class who are not parties to the adjudication; that defendants herein have acted or refused to act on grounds generally applicable to the class, thereby making declaratory, injunctive or other affirmative relief appropriate to the class as a whole; that plaintiffs are entitled to judgment against defendants declaring that these proceedings are and may be properly maintained as a class action as herein set forth.

■ 3. The defendants herein and each of them have discriminated against plaintiffs and persons similarly situated on the basis of their race and national origin in connection with administrative appointments, assignments and promotions in the defendant San Francisco Unified School District, and plaintiffs are entitled to judgment against defendants so declaring such discrimination.

4. That Resolution 112–16A7 adopted by the defendant Board of Education on December 16, 1971, contains racial percentage quotas relating to the employment of administrators by the defendant San Francisco Unified School District which quotas discriminate in favor of employees identified as "minority" employees on the basis of their race and national origin and discriminate against employees identified as "Other White" employees on the basis of their race and national origin.

5. That the adoption and enforcement of the December 16, 1971 Resolution of the defendant Board of Education of the defendant District, Resolution 112–16A7 (Exhibit A(F & C)), deprived plaintiffs and persons similarly situated of rights secured by the Fourteenth Amendment to the Constitution of the United States by 42 U.S.C. § 1983 and by 42 U.S.C. § 2000d; and the continued enforcement of said resolution, unless enjoined by the court, will further deprive plaintiffs and those similarly situated of said rights.

6. That there are no administrative remedies available and plaintiffs have no adequate remedy at law.

7. That plaintiffs are entitled to costs incurred herein.

8. That plaintiffs are entitled to judgment against defendants as follows:

(a) Declaring that these proceedings are, and may be maintained as, a class action;

(b) Finding, adjudging and decreeing that defendants, and each of them, have discriminated against plaintiffs and persons similarly situated on the basis of their race and national origin in connection with administrative appointments, assignments and promotions;

(c) Finding, adjudging and decreeing that defendants' actions as hereinbefore alleged, including adoption of Resolution 112–16A7, have deprived plaintiffs, and persons similarly situated, of rights secured by the Fourteenth Amendment to the United States Constitution, by 42 U.S.C. § 1983, and by 42 U.S.C. § 2000d;

(d) Permanently enjoining defendants, and each of them, from enforcing Resolution 112–16A7 and from otherwise discriminating against plaintiffs and persons similarly situated in connection with administrative assignments, appointments and promotions; and

. (e) Awarding plaintiffs costs.