Argued August 19, affirmed in part, reversed in part, and re-
manded for entry of an order consistent with this opinion
November 18, 1974, petition for review denied January 28, 1975

STERLING AND OTHERS SIMILARLY SITUATED,
*Respondents, v.* KLAMATH FOREST
PROTECTIVE ASSOCIATION ET AL,
*Petitioners.*

528 P2d 574

*William V. Deatherage* and *James L. Sutherland,* Medford, argued the cause for petitioners. With them on the brief were Frohnmayer & Deatherage, Medford.

*W. Michael Gillette,* Solicitor General, Salem, argued the cause for respondents. With him on the brief was Lee Johnson, Attorney General, Salem.

Before SCHWAB, Chief Judge, and FORT and THORNTON, Judges.

FORT, J.

This matter comes before us on a petition for judicial review of a final order of the Commissioner of Labor adjudging respondents below, Klamath Forest Protective Association, hereinafter referred to as KFPA, and George Wardell, its manager, guilty of discrimination in employment against complainant, William Sterling, and imposing, inter alia, a variety of orders of an "affirmative action" nature on KFPA.

William Sterling, a college student, applied for seasonal employment as a fire station guard with KFPA in July 1969. He was recommended for the position after he had tried out for the job by work-

ing a few days at one of the KFPA guard stations. The man in charge of that station, an Indian, recommended Mr. Sterling and sent him into the KFPA headquarters to file a job application. There was a vacancy at that time at that particular guard station for the position for which Mr. Sterling applied.

The application was rejected and shortly thereafter an apparently less qualified person was hired to fill the job. Mr. Sterling is a black man—the man hired was white.

The fire danger season drew to its close during October, and the seasonal employes were accordingly terminated. It was not until November 21, 1969, that Mr. Sterling filed a complaint with the Civil Rights Division of the Oregon Bureau of Labor. Thus, at the time these proceedings were commenced, the seasonal job denied him no longer existed. The order ultimately entered therefore did not direct that Mr. Sterling be placed in the position.

The Civil Rights Division began its investigation in early 1970. In July 1971, some two years after the incident which led to the complaint, the Attorney General filed the specific charges of discrimination here asserted against KFPA. A tribunal appointed by the Commissioner promptly conducted the fact-finding hearing on August 11 and 12, 1971. Findings were filed by it with the Commissioner on March 15, 1972. On February 28, 1974, nearly five years after the act charged, the Commissioner issued his Conclusions of Law and Cease and Desist Order.

The record discloses no explanation for the inordinate delay by the Commissioner, after the com-

plaint was filed, totaling well over four years, in pursuing this matter to his final determination.

We also note that KFPA, in 1972, agreed to and did thereafter pay Mr. Sterling, as a part of the conciliation process mandated by ORS 659.022 (3), $1,139, which included $1,000 for humiliation. He is, so far as the record reveals, currently an Assistant Dean of Students at Oregon State University and has had no further contact with KFPA as a job applicant since 1969.

We discussed the scope of appellate review in cases of this nature in *Williams v. Joyce,* 4 Or App 482, 479 P2d 513, 40 ALR3d 1272, Sup Ct *review denied* (1971), and said:

"Except in certain statutorily-specified instances, judicial review of the findings of administrative agencies does not confer upon the reviewing court the right to try the cause *de novo.*

" '* * * [T]he reviewing court is not granted the power to weigh the evidence and substitute its judgment as to the preponderance thereof for that of the agency. The extent to which a reviewing court should review the action of an administrative agency has been expressed by this court, as follows:

" ' "* * * Generally, they go no further than to determine whether the agency (1) acted impartially; (2) performed faithfully the duties delineated in the legislative acts which conferred jurisdiction upon it; (3) stayed within its jurisdiction; (4) committed no error of law; (5) exercised discretion judiciously and not capriciously; and (6) arrived at no conclusion which was clearly wrong." * * *.' Bay v. State Board of Education, 233 Or 601, 605, 378 P2d 558 (1963)." 4 Or App at 487.

KFPA first contends the evidence is insufficient to support a factual finding that KFPA and George Wardell, its manager, discriminated against the complainant on account of his race in violation of the Oregon Civil Rights Act. ORS 659.010-659.115. Specifically, the Commissioner determined that KFPA failed and refused to hire Sterling because of his race, and thus committed an unlawful employment practice in violation of ORS 659.030 (1) and (5). Our review of a factual issue is governed by ORS 183.480 (7) (b), which precludes reversal or remand on such ground unless

"[o]n review of a contested case, the order is not supported by reliable, probative and substantial evidence in the whole record. * * *" ORS 183.480 (7) (d).

■ There can be no question on this record but that the Commissioner's finding of racial discrimination in employment against William Sterling by both KFPA and George Wardell is amply supported. Under the foregoing rule, we see no need to set forth that evidence. This assignment is without merit.

The next contention is that since the Commissioner has failed to adopt rules pursuant to ORS 659.103, he lacked authority to issue the Cease and Desist Order here.

In *Sun Ray Dairy v. OLCC*, 16 Or App 63, 517 P2d 289 (1973), relied on by KFPA, we discussed at length the circumstances and conditions under which appropriate rules should be promulgated by an administrative agency, and the rationale for such requirements. We see no need to repeat them here. In that case, we found an order of the agency to be invalid because of OLCC's failure to promulgate rules defining what acts, conditions or omissions

might be found by it to come with the statutory phrase "demanded by the public convenience and necessity."

In contrast here, the statute involved, ORS 659.030 (1) and (5), provides:

"For the purposes of ORS 659.010 to 659.110 and 659.400 to 659.435, it is an unlawful employment practice:

"(1) For an employer, because of the race, religion, color, sex or national origin of any individual or of any other person with whom the individual associates, to refuse to hire or employ or to bar or discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment. However, discrimination is not an unlawful employment practice if such discrimination results from a bona fide occupational requirement reasonably necessary to the normal operation of the employer's business, including, but not limited to, discrimination due to the physical requirements of the employment, lack of adequate facilities to accommodate both sexes or special environmental conditions justifying such employment.

"* * * * *

"(5) For any person, whether an employer or an employe, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under ORS 659.010 to 659.110 and 659.400 to 659.435 or to attempt to do so."

■ The statute itself expressly forbade what the evidence clearly shows KFPA did—namely, it refused to hire Mr. Sterling because of his race. ORS 659.020 (2). There is no ambiguity or uncertainty in the statute. Its application to the failure of KFPA to employ Mr. Sterling required the promulgation of no rules defining the terms of the statute, unlike the phrase "demanded by public convenience and necessity" in

*Sun Ray Dairy v. OLCC,* supra. *Von Weidlein/N.W. Bottling v. OLCC,* 16 Or App 81, 97, 514 P2d 560, 515 P2d 936 (1973), Sup Ct *review denied* (1974). The contention is without merit.

The principal item of controversy, in our view, relates to two of the affirmative action provisions of the Cease and Desist Order. Those provisions state:

"(a) If a black applicant applies for a permanent professional class position with KFPA, is qualified or trainable to perform the bona fide job requirements, and there is or will be an opening for such a position, KFPA will give him preference over all those having equal or better qualifications so long as the black applicant meets the minimum bona fide occupational requirements for the job.

"(b) KFPA will give preference to al [sic] least four blacks for seasonal employment if said blacks have at least minimum bona fide occupational qualifications over other applicants who otherwise would be hired by KFPA because of equal or better qualifications."

Such provisions raise serious constitutional problems because of their obvious discrimination against members of other races. Some of these are most recently alluded to in the dissenting opinion of Mr. Justice Douglas in *DeFunis v. Odegaard,* 416 US 312, 94 S Ct 1704, 40 L Ed 2d 164 (1974). *See also: DeFunis v. Odegaard,* 82 Wash 2d 11, 507 P2d 1169 (1973); *Anderson v. San Francisco Unified School District,* 357 F Supp 248 (ND Cal 1972); *NAACP v. Allen,* 493 F2d 614 (5th Cir 1974); *Morrow v. Crisler,* 491 F2d 1053 (5th Cir 1974); *Colorado Anti-Discrimination Commission v. Case,* 151 Colo 235, 380 P2d 34 (1962).

In the view we take of this matter, we do not reach the constitutional questions. We must first consider

whether the Commission had statutory authority to enter such an order.

*Williams v. Joyce,* supra, dealt with a case of discrimination arising out of the refusal to rent an apartment to a qualified applicant because of race. We were not there presented with and did not consider the authority of the Commissioner to require affirmative action of the dimensions set forth in the Cease and Desist Order, (a) and (b) above.

ORS 659.060(3) provides that the Commissioner shall cause to be issued "an appropriate cease and desist order against any respondent found to have engaged in any unlawful practice charged."

A Cease and Desist Order is defined in ORS 659.-010 (2)(a) through (c) as

"* * * an order signed by the commissioner, taking into account the subject matter of the complaint and the need to supervise compliance with the terms of any specific order issued to eliminate the effects of any unlawful practice found, addressed to a respondent requiring him to:

"(a) Perform an act or series of acts designated therein and reasonably calculated to carry out the purposes of ORS 659.010 to 659.110 and 659.400 to 659.435, eliminate the effects of an unlawful practice found, and protect the rights of the complainant and other persons similarly situated;

"(b) Take such action and submit such designated reports to the commissioner on the manner of compliance with other terms and conditions specified in his order as may be required to assure compliance therewith; or

"(c) Refrain from any action designated in the order which would jeopardize the rights of the complainant or other person similarly situated or

frustrate the purpose of ORS 659.010 to 659.110 and 659.400 to 659.435."

The only reference to "affirmative action" in the chapter is at ORS 659.100 (1), which provides:

"* * * To eliminate the effects of discrimination the Bureau of Labor may promote *voluntarily* affirmative action by employers * * *." (Emphasis supplied.)

We note also the statements of policy and purpose contained in ORS 659.020, which provides:

"(1) It is declared to be the public policy of Oregon that practices of discrimination against any of its inhabitants because of race, religion, color, sex or national origin are a matter of state concern and that such discrimination threatens not only the rights and privileges of its inhabitants but menaces the institutions and foundation of a free democratic state.

"(2) The opportunity to obtain employment without discrimination because of race, religion, color, sex or national origin hereby is recognized as and declared to be a civil right. * * *"

Underlying philosophy of the various Civil Rights Acts is summarized in 14 CJS Civil Rights Supp 111, § 60, as follows:

"In most states there have been enacted various civil rights statutes for the protection of all races, majority or minority, from unfair employment practices. Thus, it is usually held that in the area of employment one's race, creed, color or national origin may not be made the basis for refusal of, or discrimination in, employment. State fair employment statutes, however, do not force an employer to hire employes because they may belong to a particular minority group. * * *" (Footnotes omitted.)

14 CJS Civil Rights Supp 347-49, § 211, states:

"Under statutes so providing, in a proper case a civil rights agency may issue a restraining or injunctive order, or a cease and desist order, to prevent the performance of acts violative of, or prohibited by, the statute. Also, such an agency may, in a proper case, order the respondent to take such affirmative action as will effectuate the policies and intent of the statute. Such orders may relate to the posting of notices, the instructing of employees and agents of the person charged with discrimination as to requirements and objectives of the civil rights laws, and the maintenance and furnishing of certain records and reports, which are deemed necessary to enable the agency to seek enforcement in the event of noncompliance. However, an order requiring affirmative action which serves no purpose in repairing an indignity or consoling the offended, or relates to a type of property not involved in the proceedings, or is unreasonably burdensome or arbitrary, or is harsh and inequitable as to an innocent third party, is beyond the scope of the agency's delegated authority. * * *" (Footnotes omitted.)

As we indicated in *Williams v. Joyce,* supra, antidiscrimination laws are of relatively recent origin and there is a paucity of appellate authority thereon.

New York, however, is an exception. That state's Human Relations Law has been the subject of considerable court interpretation. Moreover, its substance and wording resemble ORS ch 659 in many respects critical to the case at bar. *See* particularly, 18 McKinney's Executive Law 264-65, 267, 302, Art 15, §§ 290 (3), 291 (1), 297 (4)(c).

A formidable line of New York case authority has established the proposition that the State Division of Human Rights, the enforcement agency for the Hu-

man Rights Law, is without authority to order "affirmative action" insofar as such would result in preferential treatment for some citizens in relation to others. The rationale is that the granting of a preference would contravene state policy as expressed in § 290 (3) of the Human Rights Law to provide equal opportunity for every individual.

In *Moskal v. State, Executive Dept., Div. of Human Rts.,* 36 App Div 2d 46, 319 NYS2d 358 (1971), the Human Rights Commission determined that petitioner landlords had discriminated in the rental of housing, and ordered them to take, inter alia, the following affirmative actions:

"\* \* \* \* \* \*

"3. For a period of two years from said order:

"a. That they notify complainant in writing of the next available vacancy in the premises just denied to her, at the stated rental, or offer to her similar other premises, and allow her at least four business days in which to accept the offer,

"b. That they notify the State Division of Human Rights of any available housing accommodations now *or hereafter owned or controlled by these petitioners,* after giving complainant first opportunity of acceptance, and allow the Division or its designee at least four business days to refer the same to interested applicants, who shall be considered 'without regard to any waiting list of other applicants',

"\* \* \* \* \*" (Emphasis in original.) 319 NYS2d at 360.

On appeal, it was held that these provisions were "void as violating the general provisions of the [Human Rights] law, and the State's public policy to assure every individual equal opportunity in respect of housing \* \* \*." 319 NYS2d at 363.

In *State Division of Human Rights v. AOS Realty Corp.*, 36 App Div 2d 970, 321 NYS2d 475 (1971), it was held that a Division order to the effect that persons referred by the Suffolk County Human Relations Commission were to be given preference in housing by the party found guilty of discrimination was, in a like manner, in conflict with the policy of the state.

The New York courts have held similar directives violative of such policy in *Center Management Co. v. State Division of Human Rights,* 34 App Div 2d 637, 309 NYS2d 885, *affirmed without opinion* 27 NY2d 914, 317 NYS2d 632, 265 NE2d 926 (1970) (provision for preferential treatment in housing for those referred by "Operation Open City"); *Malcolm Cornell, Inc. v. State Div. of Human Rights,* 35 App Div 2d 730, 316 NYS2d 147 (1970) (provision for preferential treatment in housing for those referred by NAACP);' *Alden House v. State Division of Human Rights,* 35 App Div 2d 572, 313 NYS2d 464 (1970); and *State Division of Human Rights v. Jakoblew,* 41 App Div 2d 889, 343 NYS2d 141 (1973). *See also: Italiano v. New York State Ex. Dept. of H. Rts.,* 36 App Div 2d 1009, 321 NYS2d 422, *affirmed* 30 NY2d 796, 334 NYS2d 896, 286 NE2d 274 (1971); *Artis v. State Human Rights Appeal Board,* 42 App Div 2d 557, 345 NYS2d 570 (1973).

■ Legislation is to be construed so as to effectuate its declared legislative purpose. *Didier v. S.I.A.C.,* 211 Or 293, 315 P2d 589 (1957).

Here, the legislative purpose is expressly and unambiguously declared to be the removal of discriminatory barriers as against *any* inhabitant of this state. ORS 659.020, ORS 659.022. The opportunity to ob-

tain employment *without* discrimination is declared to be a civil right. ORS 659.020 (2).

■ Complainant argues that the definition of "Cease and Desist Order" set out in ORS 659.010 is authority for the Commissioner's "affirmative action" orders. Yet, his power to require the performance of acts is in that very section limited to those acts "reasonably calculated to carry out the *purposes* of ORS 659.010 to 659.110 and ORS 659.400 to 659.-435. * * *" ORS 659.010(2)(a).

■ We hold that the "affirmative action" provisions of the Commissioner's order quoted above clearly mandate preferential, as opposed to equal, employment opportunity based on race, for certain inhabitants of this state in relation to others, and are, therefore, beyond the statutory authority of the Commissioner.

■ Furthermore, as we pointed out in *Williams v. Joyce,* supra, a major thrust of the Civil Rights Law is to obtain voluntary compliance through the medium of conciliation. Here this process was utilized effectively to obtain appropriate compensation for Mr. Sterling. A principal factor which prevented completion of a mutually acceptable voluntary agreement of compliance, as envisaged in ORS 659.050, appears to have been the refusal of KFPA to agree to the two aforesaid provisions subsequently embodied in the Commissioner's Cease and Desist Order, which we have here held to have been beyond his authority to require. Obviously no contumacy on the part of KFPA can be predicated by its refusal to agree to them. It may well be, therefore, that the Commissioner will no longer conclude that substantial portions of the present Cease and Desist Order are necessary or proper to accom-

plish the legitimate purposes which he has authority, under the law, to accomplish. We therefore conclude that this matter be remanded to him for further consideration of those portions of the Cease and Desist Order which we do not expressly deal with in this opinion.

KFPA next challenges the scope of other portions of the Cease and Desist Order. In *Williams v. Joyce,* supra, we discussed at length areas and provisions which might properly be included in a Cease and Desist Order, stating:

"ORS 659.022 states the purpose of ORS 659.010 to 659.110 as being the protection of people from the consequences of discrimination, and provides:
" '* * * To accomplish this purpose the Legislative Assembly intends by ORS 659.010 to 659.110 to provide:
" '* * * * *
" '(3) An adequate administrative machinery for the orderly resolution of complaints of discrimination through a procedure involving investigation, conference, conciliation and persuasion * * *.'

"ORS 659.060 instructs the commissioner to issue an appropriate cease and desist order against any person found to have engaged in any unlawful practice charged.

"ORS 659.010 (2) defines a cease and desist order as being an order:
" '* * * [T]aking into account the subject matter of the complaint and the need to supervise compliance with the terms of any specific order issued to eliminate the effects of any unlawful practice found, addressed to a respondent requiring him to:
" '* * * * *

" '(b) Take such action and *submit such designated reports* to the commissioner on the manner of compliance with other terms and conditions specified in his order as may be required to assume compliance therewith * * *.' (Emphasis supplied.)

"ORS 659.010 (2)(a) requires the commissioner in his cease and desist order to act to 'protect the rights of the complainant and other persons similarly situated.' The petitioners had discriminated and had resisted conciliation and persuasion. The commissioner was entitled to conclude that such discriminatory conduct might continue in the future were other Negroes to apply for occupancy in the future. The statutory authorization to require reports from the petitioners provides a mechanism by which to protect the rights of other persons situated similarly to the complainant." 4 Or App at 507-08.

■ We also there expressly upheld the right of the Commissioner to require filing of reports as a part of such an order "so long as the order is related to the effectuation of the purposes of the Act and is not oppressive." *Williams v. Joyce,* supra, at 509. Here the requirements relating to the filing of reports were not so oppressive as to constitute an abuse by the Commissioner of his discretion in view of his finding of racial discrimination.

■ KFPA argues in its assignment of error No. 6 that complainant has failed to show the prerequisites of a class action. As complainant correctly points out, this is not a class action. The Commissioner has merely exercised the authority he contends was given him by statute to protect the rights of "other persons similarly situated" if discriminatory conduct against the complainant is found to exist. ORS 659.010 (2)

(a); *School Dist. No. 1, Mult. Co. v. Nilsen,* 262 Or 559, 570, 449 P2d 1309 (1972).

■ KFPA also challenges the authority of the Commissioner to appoint an Advisory Committee with the following responsibilities:

"1. Communicating the contents of this order and the steps taken to implement it to minority communities.

"2. Advising the Administrator of the Civil Rights Division of the Oregon State Bureau of Labor on progress under this Order together with recommendations.

"3. Evaluating the reports required by this Order and making recommendations thereon to the Administrator of the Civil Rights Division of the Bureau of Labor."

ORS 659.115 (1)(a) through (c) provides that the Commissioner may empower an advisory council as follows:

"(a) To study the problems of discrimination in all or specific fields of human relationships or in specific instances of discrimination because of race, religion, color, sex or national origin.

"(b) To foster, through community effort or otherwise, good will, cooperation and conciliation among the groups and elements of the population of the state.

"(c) To make recommendations to the commissioner for the development of policies and procedures in general and in specific instances, and for programs of formal and informal education."

This portion of the order was clearly within the specific authority of the Commissioner under ORS 659.115, as well as within his general authority to fashion an appropriate remedy under ORS 659.060 (3) and ORS 659.010. *Williams v. Joyce,* supra.

For this latter reason, KFPA's further argument that the Commissioner was without authority to require KFPA and Wardell to appoint a liaison person is also without merit.

■ KFPA next contends that the Commissioner's delegation of the fact-finding function to the tribunal was invalid.

ORS 659.060 (4) provides:

"(4) Nothing stated in ORS 659.010 to 659.110 and 659.400 to 659.435 shall be construed to prevent a settlement of any case scheduled for hearing under the provisions of ORS 659.010 to 659.110 and 659.400 to 659.435 by conciliation, conference and persuasion, *nor to prevent the commissioner from appointing a special tribunal to hear and determine matters of fact* under ORS 659.010 to 659.110 and 659.400 to 659.435, reserving to himself the conclusions of law and formulation of an order appropriate to the facts as found." (Emphasis supplied.)

The tribunal confined itself solely to the hearing and determining of matters of fact, as the statute provides. KFPA points to no authority which precludes such delegation by the legislature. We know of none.

We have examined KFPA's remaining contentions and find them without merit.

Affirmed in part, reversed in part, and remanded for entry of an order consistent with this opinion.