Petition for review allowed March 31, argued May 4, reversed
July 27, petition for rehearing denied September 6, 1972

# SCHOOL DISTRICT NO. 1, MULTNOMAH
COUNTY ET AL, *Respondents, v.*
NILSEN ET AL, *Petitioners.*

499 P2d 1309

560

*Victor Levy,* Assistant Attorney General, Portland, argued the cause for petitioners. With him on the briefs were Lee Johnson, Attorney General, John W. Osburn, Solicitor General, and Al J. Lane, Assistant Attorney General, Salem; Thomas N. Trotta, Assistant Attorney General and Counsel, Portland.

*Mark C. McClanahan,* Portland, argued the cause for respondents. With him on the briefs were T. Leonard O'Byrne, and Miller, Anderson, Nash, Yerke & Wiener, Portland.

Martin I. Slate, Washington, D. C., submitted a brief amicus curiae on behalf of The United States Equal Employment Opportunity Commission.

Before O'CONNELL, Chief Justice, and McALLISTER, HOLMAN, TONGUE, and HOWELL, Justices.

HOLMAN, J.

The Circuit Court of Multnomah County, at the request of School District No. 1, granted a writ of

prohibition directed to the Commissioner of Labor and the Attorney General of Oregon. The writ limited the scope of an administrative hearing before the Commissioner in which the Attorney General is prosecuting alleged discriminatory employment practices by the District. The Court of Appeals affirmed the circuit court, 7 Or App 396, 490 P2d 1265 (1971), and this court granted review.

A black teacher had been employed by the District for 23 years when she applied for a promotion to an administrative or a supervisory capacity. She was not so promoted, though there were vacancies. She then filed a complaint with the Commissioner under the Oregon Fair Employment Practices Act,[1] charging that the District had failed to promote her

---

[1] ORS 659.030: "What are unlawful employment practices. For the purposes of ORS 659.010 to 659.110, it is an unlawful employment practice:

"(1) For an employer, because of the race, religion, color or national origin of any individual, to refuse to hire or employ or to bar or discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

"* * * * *." (Amended by Oregon Laws 1969, ch 618, § 3.)

ORS 659.040: "Complaints of unlawful employment practices. (1) Any person claiming to be aggrieved by an alleged unlawful employment practice, may, by himself or his attorney, make, sign and file with the commissioner a verified complaint in writing which shall state the name and address of the person, employer, labor organization or employment agency alleged to have committed the unlawful employment practice complained of and which complaint shall set forth the particulars thereof. The complainant may be required to set forth in the complaint such other information as the commissioner may deem pertinent.

"(2) Whenever he has reason to believe that any person, employer, labor organization or employment agency has committed an unlawful employment practice, the Attorney General or the commissioner may make, sign and file a complaint in the same manner as a complaint is filed under subsection (1) of this section.

"* * * * *."

because she is black. The Commissioner thereafter made an investigation and, believing he had found substantial support for the charges, directed conciliatory proceedings to be held in accordance with ORS 659.050.[8] When the matter was not resolved by conciliation, the Commissioner referred it to the Attorney General for prosecution in conformance with ORS 659.060.[9]

The Attorney General prepared five charges. The first two allege that since 1941 the District has gen-

---

[8] ORS 659.050: "Elimination of unlawful practice by conciliation; written agreement. (1) After the filing of any complaint under ORS 659.040 or 659.045, the commissioner shall cause prompt investigation to be made in connection therewith. If during the course of such investigation or upon the conclusion thereof it appears to the commissioner that additional persons should be named as respondents in the complaint the names of such persons may be added as respondents thereto. If the investigation discloses any substantial evidence supporting the allegations of the complaint the commissioner shall cause immediate steps to be taken through conference, conciliation and persuasion to effect a settlement of the complaint and eliminate the effects of the unlawful practice and to otherwise carry out the purpose of ORS 659.010 to 659.110. "* * * * *." (Subsequently changed by Or Laws 1971, ch 723, § 2.)

[9] ORS 659.060: "Charges by Attorney General; hearing on complaints; findings; orders. (1) In case of failure to resolve a complaint after reasonable effort under ORS 659.050 a copy of the records on file in the case shall be certified by an officer of the Bureau of Labor familiar with the details thereof. He shall deliver such copy, together with a list of available dates for hearing, to the Attorney General or an Assistant Attorney General authorized to receive it.
"(2) Upon receipt of the copy of records referred to in subsection (1) of this section the Attorney General shall prepare and serve upon the commissioner and each respondent required to appear at a hearing before the commissioner, specific charges in writing he intends to prefer against such respondents, together with a written notice of the time and place of such hearing. The commissioner shall immediately schedule a hearing on the case at the time and place specified in the notice prepared and served by the Attorney General.
"* * * * *." (Subsequently amended by Oregon Laws 1971, ch 418, § 20.)

erally engaged in hiring and promotion policies which have discriminated against blacks. The last three are specific charges of discrimination against the complainant because she is black. The District challenged by demurrer and petition the jurisdiction of the Commissioner to hear the general charges, filed a motion to strike portions of the charges, and moved to make those remaining more definite and certain. In addition, the District filed an answer. All pending matters, except the merits of the controversy, were then set for a hearing. After the hearing, the Commissioner entered an order denying the motion for more clearly defined charges. No disposition was made of the District's demurrer, petition, or motion to strike.

Thereafter, a hearing was set on the merits and a subpoena duces tecum was directed to the District, requiring it to produce at the hearing voluminous personnel records and computations covering the District's employment history for approximately the last 29 years.[⊘] The District then filed its

[⊘] The subpoena demanded:

"* * * * *.

"1. All personnel files and records on all persons who were hired by Respondent for any administrative position subsequent to May 17, 1969.

"2. All personnel files and records on all persons who applied or were considered for administrative positions subsequent to May 17, 1969, and who were not hired for said positions.

"3. All personnel files and records on all persons of Negro ancestry who are presently employed in any capacity by Respondent.

"4. A list of all Federally funded programs operated by Respondent, and a copy of the guidelines covering each of such programs.

"5. A list, chart or tabulation showing each job category in Federally funded programs. Said list, chart or tabulation shall include the number of persons employed in each job category as of July 8, 1969, and the number of such persons of Negro extraction.

petition for a writ of prohibition. The gist of the District's challenge made by the application for the writ was that the applicable statutes do not authorize enlargement of the specific charges of the complainant

---

"6. All personnel files and records on all persons of Negro ancestry who applied or were considered for employment with Respondent and were not hired during the period of time from January, 1941 to October 1, 1969.

"7. A list, chart or tabulation showing each job category of employees of Respondent showing, year by year, beginning January, 1941, through and including the present, all of the following:

"a. The total number of persons employed in each job category each year.

"b. The number of persons in each job category who were of Negro ancestry each year.

"c. The percentage of persons of Negro ancestry employed in each job category each year.

"d. List of all teachers employed showing the following breakdown:

"(1) total number of teachers employed as tenure teachers and the number of those teachers who are of Negro ancestry for each year.

"(2) total number of teachers employed as probationary teachers and the number of those teachers who are of Negro ancestry for each year.

"(3) total number of teachers employed as assigned substitutes and the number of those teachers who are of Negro ancestry for each year.

"(4) total number of teachers employed as temporary teachers and the number of those teachers who are of Negro ancestry for each year.

"(5) total number of teachers employed as day by day substitutes and the number of those teachers who are of Negro ancestry for each year.

"(6) total number of teachers employed who are on leave and the number of those teachers who are of Negro ancestry for each year.

"(7) total number of teachers involved in educational advancement programs but not on leave and the number of those teachers who are of Negro ancestry for each year.

"(8) total number of teachers who are otherwise on leave and the number of those teachers who are of Negro ancestry for each year."

(that the District failed to promote her because she is black) into the general charges that like discrimination in the hiring and advancement of blacks has existed over the last 29 years.[9]

Pursuant to the District's application, the circuit court issued the writ which commanded the Commissioner and the District "* * * to desist from any further proceedings or hearings with respect to anything other than the decision of * * * School District No. 1 in May and June 1969, not to promote [complainant] from the position of classroom teacher to an administrative position." In effect, the writ eliminated the general charges of discrimination made against the District, limited the inquiry before the Commissioner to the specific charges of failure to promote the complainant, and quashed those portions of the subpoena which requested material relevant to the general charges.

The Court of Appeals held that the use of a writ of prohibition was a proper method to determine whether, under the circumstances, the statutes authorized the filing and prosecution of the general charges of discrimination. It also held that the Act did not authorize such filing and prosecution, that the Commissioner, therefore, lacked jurisdiction to consider them, and that irreparable damage would be occasioned by the burden of furnishing the information necessary to prove them. These rulings are challenged by the Commissioner and the Attorney General, who contend first that the opinion of the Court of Appeals is "* * * contrary to both the es-

---

[9] The District also contended that it, as a public employer, was not subject to the Act as it existed at the time of the filing of the teacher's complaint, but this position was abandoned.

tablished law and rules applicable to a writ of prohibition * * *." We agree and therefore conclude that the Court of Appeals and the circuit court erred in holding that a writ of prohibition is a proper vehicle with which to test the issues.

■ A writ of prohibition is defined in High's Extraordinary Legal Remedies (3d ed 1896) ch XXI, § 762, at 705:

"* * * an extraordinary judicial writ, issuing out of a court of superior jurisdiction and directed to an inferior court, for the purpose of preventing the inferior tribunal from usurping a jurisdiction with which it is not legally vested. It is an original remedial writ, and is the remedy afforded by the common law to correct encroachments of jurisdiction by inferior courts, and is used to keep such courts within the limits and bounds prescribed for them by law * * *." (footnotes omitted.)

As Professor Chafee says in his work entitled "Some Problems of Equity" at 301: " 'Jurisdiction' is one of those words which keeps jumping around."[⑥] It can be used in many different contexts, and one of the most common errors of courts is to transpose such uses. In the present context we are talking about subject matter jurisdiction. "* * * [J]urisdiction over the subject matter exists when the constitution or the legislature or the unwritten law has told *this court* to do *something* about *this kind of dispute*." (Emphasis in original.) Chafee, *supra* at 306. *Accord: Hunt v. Hunt,* 72 NY 217, 229-30, 28 Am R 129 (1878).

There can be no doubt that the legislature of this state set up a statutory plan whereby the Labor

---

⑥ See the dissenting opinion of Mr. Justice Frankfurter in City of Yonkers v. United States, 320 US 685, 64 S Ct 327, 88 L Ed 400 (1944).

Commissioner is authorized and empowered to hear disputes involving claims of racial discrimination in employment. The charges before the Labor Commissioner involve this kind of dispute. The contention of the District that the statute does not permit the specific claims of the complainant to be enlarged into general charges of racial discrimination does not raise the issue of the Commissioner's jurisdiction, but involves only the correctness of his conclusion that the statute does authorize such general charges.[7] If this were an ordinary action at law, we would say that the District is contending that the general charges of discrimination do not state causes of action under the statute. Someone has to interpret the statutes initially and to decide whether the charges are cognizable thereunder. It is obvious that the Commissioner, in the exercise of his authority as a quasi-judicial officer, is the one intended to perform this function as part of his duty to determine matters of alleged racial discrimination in employment practices.

■■ Whether or not his judgment was correct had no bearing on his jurisdiction, i.e., his authority to make the determination. Professor Chafee[8] quotes from Judge Sanborn's opinion in *United States v. Ness*, 230 F 950, 953 (8th Cir 1916), as follows:

> " 'The test of jurisdiction is not right decision, but the right to enter upon the inquiry and make some decision.' "

If the judicial officer has the authority to make the inquiry, he has the power to be wrong. An error of law, no matter how egregious, is not jurisdictional.

---

[7] We have to assume that the Commissioner so concluded from his failure to rule on the District's challenges and his setting of all charges for hearing.

[8] Chafee, Some Problems of Equity at 308.

*See* Dobbs, *Trial Court Error as an Excess of Jurisdiction,* 43 Tex L Rev 854, 868 (1965). The Pennsylvania Supreme Court in *School District of Zerbe TP v. Thomas,* 353 Pa 162, 44 A2d 566, 568 (1949)[®] construed a statute which permitted interlocutory appeals concerning questions of jurisdiction and said:

> "* * * Even if a plaintiff have no standing to bring his action, even if his statement of claim or bill in equity be demurrable, even if he fail to establish the allegations in his complaint, even if the court ultimately conclude that the relief he seeks should not be granted in whole or in part, not any or all of these circumstances would enter into, much less determine, the question whether the court has jurisdiction of the litigation."

The Commissioner had authority to decide whether the charges of general discrimination were proper under the statute. Therefore, the granting of a writ of prohibition in this case cannot be based upon lack of jurisdiction even if the Commissioner erred in his conclusion.

However, there is authority to the effect that a writ will lie to enjoin a lower court from "exceeding its authorized powers" in a proceeding over which it has jurisdiction. This is merely an equivocal way of saying the lower court erred. When the lack of an interlocutory appeal would cause *great* hardship, and an inferior court has erroneously used its power in a matter over which it has jurisdiction, there is a tendency to grant the writ. *See Culver Contracting Corporation v. Humphrey,* 268 NY 26, 196 NE 627 (1935), as quoted in *Southern Pacific Co. v. Heltzel,* 201 Or 1, 14, 268 P2d 605 (1954).

---

[®] *Also see* Studio Theaters, Inc. v. Washington, 418 Pa 73, 209 A2d 802, 804-05 (1965), and Witney v. Lebanon City, 369 Pa 308, 85 A2d 106, 108 (1952).

In *Heltzel* the Southern Pacific Company filed a petition for a writ of prohibition directed to the Public Utility Commissioner to prevent him from conducting hearings into the reasonableness of the actions of the railroad in lowering its rates for transportation of petroleum products in certain areas. The railroad asserted that the Commissioner lacked jurisdiction, contending he had no statutory authority to revise its rates upwards, which was the relief sought by truckers who were contesting the railroad's filed tariffs. This court concluded that the statute did not authorize the Commissioner to revise the railroad's rates upwards and therefore reversed the trial court which had refused to issue the writ. However, the court also decided that an appeal from the Commissioner's ruling, under the circumstances, would have been inadequate.

It would seem that when the Public Utility Commissioner was granted the power to determine the "propriety and reasonableness" of rate changes, he would have had jurisdiction to determine initially whether this statutory grant of power allowed him to raise rates as well as to lower them. It is not clear from the opinion whether the court based its decision on a belief that the Commissioner had no jurisdiction, or whether it was based upon a belief that the Commissioner erroneously used his power in a matter over which he had jurisdiction. After a discussion regarding why an appeal would not constitute an adequate remedy, the court held that "* * * [t]he above analysis shows that prohibition can serve the purpose of justice in this case much more effectively than [an] appeal." 201 Or at 21.

■ ■ In any event, whether a writ of prohibition should ever lie in a situation where a judicial officer

is acting within the scope of his jurisdiction is not a question which we have to answer in resolving the present case. In every situation, before the writ will lie, it must be shown that an appeal would be inadequate. The District urges that an appeal will be inadequate because it will be put to great effort and expense in the trial of the general charges that it has discriminated against black people over a period of years. It is our opinion that the District will suffer the same effort and expense regardless of whether the general charges are included. The scope of inquiry under the specific charges of discrimination is sufficiently broad to inquire into the past conduct of the District generally in relation to blacks, because proof of past discrimination against blacks would lend credence to complainant's specific charges of discrimination against her. In addition, if discriminatory conduct against the complainant is found to exist, the Commissioner has the authority to protect the rights of "other persons similarly situated,"[®] i.e., other employees who are subject to racial discrimination by the District. Therefore, it makes little difference whether or not the general charges of discrimination against blacks remain in the complaint insofar as the scope of

---

[®] ORS 659.010:

"\* \* \* \* \*.

"(2) 'Cease and desist order' means an order signed by the commissioner, taking into account the subject matter of the complaint and the need to supervise compliance with the terms of any specific order issued to eliminate the effects of any unlawful practice found, addressed to a respondent requiring him to:

"(a) Perform an act or series of acts designated therein and reasonably calculated to carry out the purposes of ORS 659.010 to 659.110, eliminate the effects of an unlawful practice found, and protect the rights of the complainant and other persons similarly situated;

"\* \* \* \* \*."

the inquiry and the relief that may be granted are concerned. For this reason, an appeal from the final order of the Commissioner is as efficacious a remedy as is a writ of prohibition.[①]

■ The District contends that the furnishing of all the voluminous records and compilations covering many years would be a great burden upon it and that the writ should lie to limit the scope of the subpoena duces tecum. It is our opinion that a writ of prohibition should never lie to test the breadth of such a subpoena. We prefer the federal rule that a writ of prohibition will not lie to review a trial court's ruling either granting or denying a motion for discovery.[②] For all we know, if proper application was made by the District to ameliorate the seemingly undue burden of the subpoena, the Commissioner would permit the inspection of the District's records by the Attorney General to take place in the District's office and would limit the number of compilations and the period covered by the inquiry to the minimum which is necessary to determine whether there was an established practice

---

[①] ORS 659.060 (2) provides that procedures under the Act shall be governed by the Administrative Procedures Act. ORS 183.480, as amended by Oregon Laws 1971, ch 734, § 18, now provides for an appeal to the Court of Appeals of other than final orders upon a showing that the agency is proceeding without probable cause, or that the party will suffer substantial and irreparable harm if interlocutory relief is not granted.

[②] Paramount Film Distributing Corp. v. Civic Center Theatre, 333 F2d 358 (10th Cir 1964); Chemical and Industrial Corp. v. Druffel, 301 F2d 126, 133 USPQ 133 (6th Cir 1962); In re Illinois Cent. R. Co., 192 F2d 465 (5th Cir 1951); Bank Line v. United States, 163 F2d 133 (2d Cir 1947); Terminal R. Ass'n. of St. Louis v. Moore, 145 F2d 128 (8th Cir 1944). See Annot., 95 ALR2d 1229 (1964) for a compilation of cases holding both ways. Compare the experience of Missouri, which has allowed the use of the writ to review the scope of a subpoena duces tecum. *Prohibition—To Prevent Discovery Proceedings,* 35 Mo L Rev 533 (1970).

of discrimination. The labor of such inspection and compilation could be shared and, at the same time, the District's records would remain relatively undisturbed and available to the District. A subpoena requiring such voluminous records to be produced en masse for the *first* time *at a hearing* on the merits is normally modified in some manner. If the subpoena actually had been complied with, the Attorney General would have been unable at that time, as a practical matter, to make efficacious use of the material.

This case is a typical example of why a writ of prohibition should be used sparingly as an interlocutory appeal. Approximately three years have elapsed since charges were filed by the complainant. Two years have elapsed since the charges were set for hearing. The matter has not yet been heard on its merits at the trial level. If a writ of prohibition were a proper vehicle to test the Commissioner's rulings on the breadth of charges which may be filed under the Act or on the scope of subpoenas duces tecum, no useful and timely determination could ever be expected of charges of discrimination.

Because we find an interlocutory appeal by way of a writ of prohibition to be improper, it is unnecessary for us to discuss the merits of the District's contention concerning the propriety of the general charges.

The judgments of the circuit court and of the Court of Appeals are reversed.