Argued and submitted August 4, 2004, affirmed April 13, 2005

MOUNT HOOD COMMUNITY COLLEGE,
acting by and through K & H Drywall, Inc.,
an Oregon corporation,
and Mount Hood Community College,
*Plaintiffs,*
*and*

STATE OF OREGON,
acting by and through K & H Drywall, Inc.,
an Oregon corporation,
*Respondent,*

*v.*

FEDERAL INSURANCE COMPANY,
*Defendant,*
*and*

KEETON CONSTRUCTION CORPORATION,
an Oregon corporation;
and Federal Insurance Company,
a California corporation,
*Appellants.*

0102-01489; A119965

111 P3d 752

Matthew A. Wand argued the cause for appellants. With him on the briefs were Jeffrey B. Wilkinson, and Stewart Sokol & Gray LLC.

Barry L. Adamson argued the cause and filed the brief for respondent.

Before Wollheim, Presiding Judge, and Schuman, Judge, and Leeson, Judge pro tempore.*

LEESON, J. pro tempore.

* Leeson, J. pro tempore, *vice* Edmonds, P. J.

### LEESON, J. pro tempore

Defendants Keeton Construction Corporation (Keeton) and Federal Insurance Company (Federal) appeal from a judgment for plaintiff in this breach of contract action, assigning as error the trial court's denial of defendants' motion for judgment of involuntary dismissal under ORCP 54 B(2) and the trial court's denial of defendants' petition for attorney fees. We review for errors of law, *see May v. Chicago Insurance Co.*, 260 Or 285, 292, 490 P2d 150 (1971) (contract interpretation generally matter of law), and affirm.

We state the facts most favorably to plaintiff, the prevailing party. *See* ORCP 62 F; *Illingworth v. Bushong*, 297 Or 675, 694, 688 P2d 379 (1984) (in action at law tried to court appellate court reviews factual findings for any evidence to support them). In May 1999, Mt. Hood Community College awarded Keeton a public contract to build a new building (Phase I) and remodel an adjacent building (Phase II). In June 1999, Federal executed a labor and materials payment bond covering Keeton's performance under that contract. Keeton thereafter entered into a written contract with plaintiff, a subcontractor whose primary business was installing metal framing, drywall, and acoustic ceilings. The contract specified that plaintiff would be paid $121,285.00 for its work on both phases of the project. Plaintiff was within the category of those protected by the bond from defendant Federal.

In late November 1999, after completion of Phase I, Keeton terminated plaintiff's contract. Plaintiff subsequently brought this action, alleging five claims for relief against defendants: (1) a claim on the bond for $59,570.35, plus prejudgment interest at 12 percent and attorney fees; (2) a claim for breach of contract for $59,570.35, plus costs and attorney fees; (3) a claim for *quantum meruit* and unjust enrichment for $59,570.35, representing the labor, materials, equipment, and supplies that plaintiff had provided and for which it had not been paid, plus costs and disbursements; (4) a claim under the Prompt Pay Act, ORS 279.312 and ORS 297.445, for interest as provided by the Act on $42,224.50;

and (5) a claim on an account for $59,570.35 plus costs and disbursements. Defendants filed a counterclaim.

On September 17, 2002, several days after the end of a four-day bench trial, the trial court issued a detailed letter opinion finding in favor of plaintiff and denying defendants' counterclaim. On October 3, 2002, defendants filed a motion for "Judgment of Involuntary Dismissal Under ORCP 54(B)(2)," asking the court to dismiss all of plaintiff's claims on the ground that plaintiff "failed to prove an essential element of its *prima facie* case: that [plaintiff] was registered with the Construction Contractors' Board (CCB)." Defendants acknowledged that they had not raised the issue of plaintiff's registration as an affirmative defense or at any other time during the trial. However, they argued that, under ORS chapter 701, a contractor must be registered with the CCB "as a prerequisite to both working as a contractor and to maintaining a legal action regarding that work in any court of this state" and that plaintiff's failure to prove that it was registered with the CCB deprived the court of subject-matter jurisdiction. The trial court denied the motion. It concluded that defendants had not made the motion on time and therefore had waived it; the court rejected the argument that the issue was jurisdictional.

After denying the motion, the trial court entered a money judgment for $36,962.63 in favor of plaintiff on plaintiff's first, second, and fourth claims (bond, breach of contract, and violation of the Prompt Pay Act). The judgment also dismissed plaintiff's third claim (for *quantum meruit* and unjust enrichment) and declared plaintiff's fifth claim (action on an account) moot on the ground that it merged with the claim for breach of contract. The court dismissed defendants' counterclaim with prejudice. Both sides sought attorney fees and costs. The court granted attorney fees of $110,987.79 to plaintiff and denied defendants' petition.[1]

---

[1] Defendants sought attorney fees of $71,014.68. As we discuss under defendants' second assignment of error, on appeal they argue that they prevailed on plaintiff's *quantum meruit* claim and that the trial court erred in not basing its attorney fee award on a "claim by claim" analysis. The relief that defendants apparently seek on their second assignment of error is a remand to the trial court to determine the amount of their attorney fees for prevailing on the *quantum meruit* claim.

On appeal, defendants first contend that the trial court erred in denying their motion for an involuntary judgment of dismissal as untimely.[2] Defendants make two arguments in support of that contention. First, they argue that their motion was timely because they made it before entry of any order or judgment. Second, they argue that proving registration with the CCB under ORS 701.065 is a jurisdictional prerequisite to maintaining an action and that jurisdictional matters may be raised at any time. Plaintiff responds that defendants waived any right they might have had under ORCP 54 B(2) and that nothing in ORS 701.065(1) makes compliance with its provisions jurisdictional.

■    We first address defendants' jurisdictional argument because, if they are correct that the court lacked subject matter jurisdiction, then they also are correct that their motion for involuntary judgment of dismissal was timely. *See Weatherspoon v. Allstate Ins. Co.*, 193 Or App 330, 334, 89 P3d 1277, *rev den*, 337 Or 327 (2004) (subject matter jurisdiction never waived; can be raised by any party or court *sua sponte* at any stage of proceedings).

ORS 701.065(1) provides:

"*Except as provided in subsection (2) of this section*, a contractor may not perfect a claim of a construction lien or commence a claim with the Construction Contractors Board, in arbitration or in any court of this state for compensation for the performance of any work or for the breach of any contract for work that is subject to this chapter, unless the contractor had a valid license issued by the board:

"(a)   At the time the contractor bid or entered into the contract for performance of the work; and

"(b)   Continuously while performing the work for which compensation is sought."

(Emphasis added.) Defendants contend that the statute "mandates that a contractor be registered with the CCB as a prerequisite to both working as a contractor and to maintaining a legal action regarding that work in any court of this state." Plaintiff responds that most of this court's cases on the

---

[2] We set out ORCP 54 B(2) in full later in this opinion. 199 Or App at 154.

matter have treated ORS 701.065(1) as a defense rather than an affirmative pleading obligation. Without regard to pleading requirements however, we find nothing in the statute that suggests that failure to prove that the contractor is licensed deprives the court of jurisdiction over the dispute. Rather, that failure, when timely brought to the court's attention, prevents the contractor from recovering on its claims.[3]

■■     Oregon courts have subject matter jurisdiction over disputes if the constitution, a statute, or the common law tells them to do something about the specific kind of dispute presented. *School Dist. No. 1, Mult. Co. v. Nilsen*, 262 Or 559, 566, 499 P2d 1309 (1972). Circuit courts generally have subject matter jurisdiction over contract disputes because courts had such jurisdiction at common law. *Weatherspoon*, 193 Or App at 334. The question here is whether the legislature intended to divest courts of subject matter jurisdiction if a contractor failed to comply with the licensing requirements of ORS 701.065(1).

■     The requirements of a statute that are essential to due process are jurisdictional. However, statutory requirements over and above the bare minimum necessities of due process are jurisdictional only if the legislature intended to make them so. *Frederick v. Douglas Co. et al.*, 176 Or 54, 63-64, 155 P2d 925 (1945); *see also Greeninger v. Cromwell*, 127 Or App 435, 438, 873 P2d 377 (1994) (circuit courts have subject-matter jurisdiction unless statute or rule divests them of jurisdiction). With that perspective, we turn to defendants' contention that ORS 701.065 is jurisdictional.

We have held that ORS chapter 701, which was originally enacted in 1971, "is essentially a consumer Act designed primarily to protect the public from irresponsible builders." *Parsons v. Henry*, 65 Or App 627, 629, 672 P2d 717 (1983), *rev den*, 297 Or 82 (1984). In other words, the legislature's motivation in enacting the statute was to protect consumers, not to implement any due process requirements. The

_____

[3] Indeed, accepting defendants' arguments apparently leads to the conclusion that the requirement is not jurisdictional but, rather, is a condition precedent that is subject to the pleading and proof requirements of ORCP 20 A. Because the parties do not raise that issue we do not discuss it further.

next question, therefore, is whether the legislature intended to make ORS 701.065(1) jurisdictional. In answering that question, plaintiff relies in part on this court's statement in *Beckwith v. Frazey*, 86 Or App 236, 738 P2d 1003, *rev den*, 304 Or 279 (1987), that "ORS 701.065 is not jurisdictional." Defendants, in response, dismiss that statement as merely "one sentence from a one page decision[.]"

Although the court in *Beckwith* did not explain its statement that ORS 701.065 is not jurisdictional, that statement was essential to the holding of the case and, thus, is a binding precedent of this court. The defendant in *Beckwith* sought to have an existing judgment set aside as void on the ground that the plaintiff's alleged failure to comply with the statute deprived the trial court of jurisdiction over the dispute. We rejected the defendant's argument, stating that

> "[t]he statute might have been a successful defense had it been raised at an appropriate time * * *. That, however, is not the issue before us. ORS 701.065 is not jurisdictional, and defendant cannot use it to have the 1983 judgment set aside as void."

*Beckwith*, 86 Or App at 238.

The rationale for our conclusion in *Beckwith* is clear if one considers the current statute in its entirety, which defendants do not do. ORS 701.065 contains two subsections. Subsection (1) begins with the phrase, "[e]xcept as provided in subsection (2) of this section[.]"[4] That phrase makes clear that the legislature created exceptions to the licensing requirements of subsection (1) and that that requirement is subject to the exceptions listed in subsection (2). Subsection (2), in turn, lists the circumstances under which the "board, arbitrator or court *shall not* apply the provisions of subsection (1)[.]" (Emphasis added.) That statement presumes that the board, arbitrator, or court has jurisdiction of a claim and then instructs the decision-maker about the circumstances under which it shall not apply the provisions of subsection

---

[4] Defendants purport to quote ORS 701.065(1) in their brief, but they omit the introductory phrase and do not refer to subsection (2) despite the express reference to it in subsection (1). *See* ORS 174.010 (in construing statute court is not to insert what has been omitted or omit what has been inserted).

(1). Those instructions would be unnecessary if the legislature intended ORS 701.065 to be jurisdictional. The trial court did not err in denying defendants' motion for involuntary dismissal on the ground that plaintiff's alleged failure to present a *prima facie* case that it had complied with ORS 701.065(1) deprived the court of jurisdiction of the claim.

■        Defendants' other argument under their first assignment of error is that the trial court erred in denying their motion for involuntary dismissal under ORCP 54 B(2) on the ground that the motion was not timely. As noted, the trial court issued its letter opinion on September 17, 2002, and defendants filed their motion for involuntary dismissal 16 days later, on October 3, 2002. Defendants contend that nothing in the text of ORCP 54 B(2) explicitly prohibits a party from moving for involuntary dismissal after a trial court has issued a letter opinion but before it enters judgment.[5] Plaintiff responds that the text and context of the rule defeat defendants' argument.

ORCP 54 B(2) provides:

> "After the plaintiff in an action tried by the court without a jury has completed the presentation of plaintiff's evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a judgment of dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment of dismissal against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment of dismissal with prejudice against the plaintiff, the court shall make findings as provided in Rule 62."

In construing the rule, we apply the familiar methodology prescribed in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993), by first examining its text and context. Context includes relevant judicial constructions of the rule. *State v. Thompson*, 166 Or App 370, 377, 998 P2d 762 (2000). If the legislature's intent is clear, we proceed no further. *PGE*, 317 Or at 610.

---

[5] At oral argument, defendants acknowledged that their construction of ORCP 54 B(2) is "contrary to experience" and the "court's instinct" about the rule.

We begin with the text of ORCP 54 B(2), which consists of three sentences. The first sentence is directed to the defendant and the second two sentences are directed to the court. Only the first two sentences are relevant to whether a motion for involuntary dismissal is timely if it is made after trial but before judgment. The first sentence permits, but does not require, a defendant to move for a judgment of dismissal on the ground that the plaintiff has shown no right to relief. The word "may" means that the defendant has a choice about whether to make the motion. With respect to when the defendant should make the motion if it decides to do so, the rule specifies that the defendant may move after the plaintiff "has completed the presentation of plaintiff's evidence." The first sentence also provides that the defendant does not waive the right to offer evidence if the court does not grant the motion. The wording of the first sentence suggests that, if a defendant chooses to move for an involuntary dismissal, the appropriate time to do so is after the plaintiff has completed its case-in-chief and before the defendant presents its evidence.

The second sentence of the rule gives the court discretion to grant or deny the defendant's motion at two different times: when the motion is made or after the close of all the evidence. That sentence assumes that the defendant has made the motion for involuntary dismissal after the presentation of the plaintiff's case but before the defendant has presented its case, and it permits the court to decide whether to render judgment of dismissal against the plaintiff when the motion is made or to postpone ruling on the motion until the close of all the evidence. Nothing in the second sentence gives the court authority to rule on the motion after trial. The second sentence, like the first, suggests that defendants are incorrect in their belief that a motion for judgment of involuntary dismissal is timely if it is made after trial.

We turn to the context of ORCP 54 B(2). ORCP 1 B provides that the rules of civil procedure "shall be construed to secure the just, speedy, and inexpensive determination of every action." Interpreting ORCP 54 B(2) in the manner advanced by defendants would be contrary to the directive in

ORCP 1 B. Permitting a party to make a motion for involuntary judgment of dismissal after a court has issued its decision would not foster speedy or inexpensive determination of actions for either the parties or the court. And it would be patently unfair to construe the rule as permitting a party to lie in the weeds, as defendants did here, waiting until after it learned that it had lost on the merits to make the motion.

■ We described the background and purposes of ORCP 54 B(2) in *Castro and Castro*, 51 Or App 707, 626 P2d 950 (1981), which is at least context for construing the rule. In *Castro*, we noted that the rule is based on FRCP 41(b) and replaces the previous Oregon procedure of a motion for an involuntary nonsuit. Like its federal counterpart, the purpose of the rule "is to expedite the trial of cases by giving the trial court the power to dispose of cases *at the earliest opportunity.*" *Id.* at 710 (emphasis added). Cases under both rules involve motions made during trial, not afterwards. Under the practice before the adoption of the Oregon Rules of Civil Procedure, a court could order an involuntary nonsuit "when upon the trial the plaintiff fails to prove a cause sufficient to be submitted to the jury, or upon a trial without a jury when the evidence is not sufficient to establish a prima facie case for the plaintiff." *Former* ORS 18.230(1)(c) (1977), *repealed by* Or Laws 1979, ch 284, § 199. Both the previous practice and the current rule, thus, focus on testing the strength of the plaintiff's evidence during the trial in order to cut the trial short if the evidence is inadequate. Nothing in the rule suggests that it is a method for challenging the sufficiency of the evidence after the court has ruled on the merits. Permitting the motion to be made after trial and after a court has made its decision is inconsistent with the rule's language and purpose. The trial court did not err in denying defendants' motion for involuntary dismissal when defendants made the motion after the court had issued its decision.

■ We turn to defendants' second assignment of error, in which they assert that the trial court erred in denying defendants' petition for attorney fees as the prevailing party on plaintiff's claim for damages in *quantum meruit*. As noted above, the trial court entered judgment in favor of plaintiff on plaintiff's claims on the bond, for breach of contract, and under the Prompt Pay Act claim, and it awarded plaintiff a

money judgment in the amount of $36,962.63. The judgment dismissed plaintiff's claim for *quantum meruit* and merged plaintiff's breach of contract claim with its claim on an account.

Defendants argue that they are entitled to attorney fees on plaintiff's *quantum meruit* claim because they successfully "enforced the contract" against that claim. They rely on the attorney fee clause in the subcontract between Keeton and plaintiff and this court's decision in *CMS Sheep Co., Inc. v. Russell*, 179 Or App 172, 39 P3d 262, *rev den*, 334 Or 260 (2002), to support that argument. Plaintiff responds that Keeton's argument that it "won" the *quantum meruit* claim by losing the contract claim is without merit. Rather, plaintiff contends, the *quantum meruit* claim "disappeared solely as a matter of law and became superfluous by virtue of [p]laintiff's success in demonstrating a breach of the [c]ontract itself." Moreover, plaintiff maintains, the parties' contract clearly contemplates that there can be only one prevailing party.

We begin by examining the attorney fee clause in the subcontract between Keeton and plaintiff. It provides:

"9.20 Attorney's Fees:

"* * * should either party employ an attorney to institute suit or demand arbitration to enforce *any of the provisions hereof*, to protect its interest in any matter arising under this agreement, or to collect damages for the breach of the agreement, or to recover on a surety bond given by a party under this Agreement, *the prevailing party* shall be entitled to recover reasonable attorney's fees in all trial and appellate courts, and all costs, charges, and expenses incurred therein."

(Ellipsis in original; emphasis added.) Defendants contend that the words "any of the provisions hereof" and "protect its interest" clearly state the parties' intent that the court make a "claim by claim" determination of a party's entitlement to attorney fees. Plaintiff responds that the reference to "provisions" in the attorney fee clause is to the contract and that defendants did not prevail on any of the provisions of the contract. Moreover, plaintiff notes, use of the definite article

"the" before "prevailing party" clearly signals the parties' intent that there be but one prevailing party.

Even assuming that the attorney fees clause in the parties' contract contemplates an award of attorney fees on a claim-by-claim basis rather than to "the" prevailing party in an action to enforce the contract and that the clause is "unique," as defendants profess, in providing for fees for prevailing on a *quantum meruit* claim, defendants are incorrect that plaintiff's *quantum meruit* claim is a separate "claim" *under the contract for these purposes*. Plaintiff sought damages of $59,570.35 on its claim for breach of contract. Plaintiff alleged the same operative facts and sought the same amount—$59,570.35—on its *quantum meruit* claim. Although not captioned as such, plaintiff's *quantum meruit* claim was an alternative theory for recovering the same damages that it claimed under its breach of contract claim. Indeed, the use of a *quantum meruit* claim as an alternative to a breach of contract claim is so common that it is not only unremarkable but something that is expected. As is also common, plaintiff based both its breach of contract claim and its *quantum meruit* claim on the same operative facts. Plaintiff was entitled to plead alternatively on an express contract and in *quantum meruit* without having to elect the theory upon which it would rely. *Kashmir Corp. v. Patterson*, 289 Or 589, 592, 616 P2d 468 (1980); *see also* ORCP 24 A.

At trial, defendants conceded that the parties' contract was valid and enforceable. At that point, the action became one in contract and the *quantum meruit* claim dropped out of the case. It is well established that there cannot be a valid, legally enforceable contract and an implied contract covering the same conduct. *Prestige Homes Real Estate Co. v. Hanson*, 151 Or App 756, 762, 951 P2d 193 (1997). Accordingly, defendants are incorrect that plaintiff alleged a "claim" on which defendants "prevailed." Rather, the court disposed of the *quantum meruit* claim without reaching its merits.[6]

---

[6] Even if we were to assume that ORS 20.077, as enacted in 2001, *see* Or Laws 2001, ch 417, § 1, applies to this case, our analysis would not be affected. *See American Petrofina v. D & L Oil Supply*, 283 Or 183, 198-200, 583 P2d (1978); *Petersen v. Fielder*, 185 Or App 164, 172-73, 58 P3d 541 (2002).

*CMS Sheep Co.* does not compel a different analysis. In that case, the plaintiff initiated an action for breach of contract, timber trespass, and various equitable claims against the defendants. The plaintiff prevailed on its timber trespass claim but lost on all others. 179 Or App at 175. We held that the trial court erred in failing to award the defendants attorney fees for prevailing on the breach of contract claims because they were the prevailing parties on those claims. *Id.* at 178. In this case, as we have explained, it is incorrect to view defendants as the prevailing party on plaintiff's *quantum meruit* claim. The trial court did not err in denying defendants' petition for attorney fees.

Affirmed.