Argued and submitted February 1, affirmed April 6, 2022

Maureen GEORGE-BUCKLEY,
*Plaintiff-Appellant,*

*v.*

MEDFORD SCHOOL DISTRICT 549C,
*Defendant-Respondent.*

Jackson County Circuit Court
19CV14375; A174520

509 P3d 738

Plaintiff brought this action in circuit court alleging contract and quasi-contract claims. The trial court dismissed her claims and granted summary judgment to defendant after it concluded that the claims were subject to the exclusive jurisdiction of the Employment Relations Board (ERB). On appeal, plaintiff argues that the trial court erred, because defendant's jurisdictional argument was first raised in a reply memo and because, in her view, her common-law claims are not subject to ERB jurisdiction. *Held*: The Court of Appeals concluded that the trial court did not err in considering defendant's jurisdictional challenge, nor in concluding that ERB had exclusive jurisdiction over plaintiff's claims. The court determined that, where an element of tort alleges an unfair labor practice (ULP), the Public Employees Collective Bargaining Act (PECBA) vests exclusive jurisdiction with ERB. The court determined that plaintiff's claims amounted to allegations of a ULP based on a breach of the Collective Bargaining Agreement (CBA) between plaintiff's union and defendant. Because PECBA vests exclusive jurisdiction over such claims to ERB, the court concluded that the trial court did not err when it dismissed the claims and granted summary judgment to defendant.

Affirmed.

Benjamin M. Bloom, Judge.

Thomas Dimitre argued the cause for appellant. Also on the briefs was Thomas Dimitre Attorney at Law LLC.

Lucas Reese argued the cause for respondent. Also on the brief were Shayna M. Rogers and Garrett Hemann Robertson PC.

Before Shorr, Presiding Judge, and Mooney, Judge, and DeVore, Senior Judge.

DeVORE, S. J.

Affirmed.

**DeVORE, S. J.**

Plaintiff George-Buckley is an educational assistant who served in the role of a teacher for 12 years with the defendant Medford School District 549C (district). She brought this action in circuit court alleging contract and quasi-contract claims. She appeals from a judgment dismissing her claims after the trial court granted defendant's motion for summary judgment. The trial court concluded that it lacked jurisdiction, because the Employment Relations Board (ERB) had exclusive jurisdiction of the claims. Plaintiff argues that the trial court erred, because the district's jurisdictional argument was first raised in a reply memo and because, in her view, her common-law claims are not subject to ERB jurisdiction. We conclude that the trial court did not err and, therefore, affirm.

## FACTS

Because the issue arises on summary judgment, we state the facts in the light most favorable to plaintiff as the nonmoving party. ORCP 47 C; *Hoag Living Trust v. Hoag*, 292 Or App 34, 39, 424 P3d 731 (2018). As it happens, the dispositive facts concerning ERB's jurisdiction are undisputed.

In November 1999, the district hired plaintiff for a position described as an "educational assistant—computer lab" at "Range 12, Step 1." Her individual contract is entitled "Notice of Initial Hiring Conditions," and it provides that the conditions of employment "are subject to [the] Collective Bargaining Agreements and/or future modifications between [the district] and the Oregon School Employees Association, Chapter #15." She acknowledged receipt of the Classified Employees Handbook, which was incorporated into her contract. The initial job description summarized her responsibilities as "[u]nder supervision, performs a wide variety of duties assisting a teacher in a high school computer lab instructional setting." Another early job description announced that the position "[a]ssists teachers in the computer lab by performing clerical and paraprofessional duties including working with groups of students with computer lab and testing needs." The position required high school graduation or the equivalent. Plaintiff has done some

college studies, but she did not have a college degree or a teaching license. A few weeks after she was hired, a joint Labor Management Team approved reclassification of her position so as to provide an improved salary in Range 13. In deposition testimony, plaintiff acknowledged that compensation and the classification of jobs is a scheme "governed by the collective bargaining agreement that is negotiated between the classified [employees] union and the school district."

For the first five or six years, plaintiff worked within her role as an educational assistant. Teachers would bring students into her computer lab and stay with them. In school year 2006-07, the district gave plaintiff a few computer-skills classes to teach on her own, which "morphed into giving [her] more classes," resulting in a full day teacher's schedule. The district showed plaintiff as a teacher in its class schedule although the coursework required a certified teacher.[1] In her deposition testimony, plaintiff acknowledged that no one from the district led her to believe that she "would be paid more than what had been communicated under the collective bargaining agreement." She continued in the enlarged role for the next twelve years from school years 2006-07 through 2017-18.

In February 2017, plaintiff made a request to the Position Review Committee for a review of her job classification. An OSEA field representative helped her in making the request. The process allows an employee who believed their duties had changed to seek a remedy such as reclassification, if they believed that their current job description was no longer accurate. After information is gathered, the process provides that the committee will make a recommendation, and, if necessary, the joint Labor Management Team will make a final decision. In her deposition, plaintiff agreed that a reclassification review is a process provided by the collective bargaining agreement (CBA).

---

[1] *See generally* ORS 342.125 (teaching licenses); ORS 342.121 (licensing by Teacher Standards and Practices Commission [(TSPC)]); ORS 342.138(1) (a teaching license qualifies person to teach); OAR 584-200-0020(1), (2) ("An educator must hold a license or registration issued by the [TSPC] if she or he is (a) employed by an Oregon public school; and (b) compensated for their services from public funds.").

The committee found that plaintiff was performing duties outside her job description. The committee's response, however, was not to reclassify plaintiff's position with her continuing to serve enlarged duties, but rather, to maintain her employment as an educational assistant with appropriate duties. The district hired a certified teacher for the computer-skills classes for the following school year 2018-19. Plaintiff did not challenge the committee's decision by seeking review before the joint Labor Management Team—the body that had previously approved her reclassification.

## PROCEEDINGS

In April 2019, plaintiff filed this action in the circuit court, alleging four contract or quasi-contract claims. Common to all the claims, she alleged that, beginning in school year 2006-07 and continuing through school year 2017-18, she "assum[ed] the duties of a teacher *** though she was improperly classified as an Educational Assistant." She alleged that, although the position of an educational assistant is to assist teachers, "she was the only teacher for the computer classes."

As her first claim, she alleged a breach of contract and that she was not paid as a teacher, although she performed the duties of a teacher. As her second claim, she alleged "promissory estoppel" and that the district had her work as a teacher but refused to pay an appropriate wage for that work. As her third claim, she alleged unjust enrichment, that she worked as a teacher but was only paid as an educational assistant. As her fourth claim, she alleged breach of a duty of good faith and fair dealing, that she had a reasonable expectation that she would be paid for doing teaching work, but that the district did not pay commensurate with her work as a teacher. On all claims, she sought economic damages of $62,776 for the lost value of her work and noneconomic damages of $50,000, including for emotional distress.

The district filed an answer and later responded with a motion for summary judgment. In its opening paragraph of the motion, the district argued:

"The exclusive remedy for Plaintiff's grievance that she performed duties beyond her assignment as an educational

assistant is under her Collective Bargaining Agreement, which has already been pursued and resolved through the administrative process."

As for the merits of the first claim, the district argued that there was no express or implied contract to be paid anything beyond what was specified in plaintiff's written individual contract and the collective bargaining agreement. The district argued similarly with regard to the claims of promissory estoppel, unjust enrichment, and a breach of a duty of good faith and fair dealing. In its reply memorandum, the district put a finer point on its initial argument, contending:

> "Plaintiff's Response * * * confirms the only contract at issue in this case is the Collective Bargaining Agreement ('CBA') between the District and its classified employees. Oregon law is clear that any purported breach of the CBA is subject to the exclusive jurisdiction of the Employment Relations Board ('ERB'). Therefore, this Court lacks jurisdiction to address the pending contract and quasi-contractual claims and the District's Motion for Summary Judgment must be granted as a matter of law."

The district developed that argument, citing as support case law involving common-law claims that included a question committed to the exclusive jurisdiction of ERB.

At the hearing on the district's motion, the parties' arguments centered on the legal issue of whether ERB had exclusive jurisdiction over plaintiff's claims. The district argued that it did, because plaintiff's claims involved an unfair labor dispute. Plaintiff argued that it did not, because, she asserted, her claims were simply common-law claims. After taking the matter under advisement, the trial court concluded, "These claims are subject to the exclusive jurisdiction of the Employ[ment] Relations Board."[2]

Plaintiff appealed the dismissal of her claims. In her first assignment of error, she argues that the trial court erred in entertaining defendant's jurisdictional challenge, because it was asserted for the first time in a reply memorandum. In her second and third assignments, she argues that

---

[2] In the alternative, the court concluded, as to the merits of the claims, that there was no material dispute of fact upon which plaintiff could recover on the several claims other than, potentially, unjust enrichment.

the trial court erred in determining that ERB had exclusive jurisdiction of her claims. In her fourth, fifth, and sixth assignments, she argues that the trial court erred when ruling, in the alternative, against her claims on their merits.[3] The district cross-assigns as error the trial court's ruling, in the alternative, that it would not have dismissed the unjust enrichment claim on its merits. For the reasons that follow, we conclude that the trial court did not err in considering the district's jurisdictional challenge, nor in concluding that ERB has exclusive jurisdiction of plaintiff's claims. We do not need to reach the other assignments of error.

## PROCEDURAL OBJECTION

In support of her first assignment, plaintiff argues that the district did not present its jurisdictional issue in its opening arguments on its motion and that a new issue cannot be raised for the first time in a reply memorandum on summary judgment. Although that argument might not be wrong in other circumstances, plaintiff's arguments do not preclude the trial court's consideration of the district's jurisdictional issue here.

In the opening paragraph of its motion, the district argued that the "exclusive remedy" for plaintiff's complaint "that she performed duties beyond her assignment as an educational assistant" was under her union's labor agreement and that the dispute was a matter that had already been resolved. The district's opening argument about an exclusive *remedy*, however, did not necessarily assert that ERB had exclusive *jurisdiction*. (The initial argument might have implied issue or claim preclusion rather than exclusive jurisdiction.) The district made the point plain only in its reply memorandum, arguing there that the trial court lacked jurisdiction.

Plaintiff's procedural objection relies on two cases. In *Two Two v. Fujitec America, Inc.*, 355 Or 319, 325, 325 P3d 707 (2014), the problem was that the defendant, who had moved for summary judgment, had not raised the

_____

[3] As noted, the trial court did not rule against plaintiff's unjust enrichment claim on its merits.

factual issue of causation until their reply memorandum. The Supreme Court observed:

> "Parties seeking summary judgment must raise by motion the issues on which they contend they are entitled to prevail as a matter of law. Parties opposing summary judgment have the burden of producing evidence that creates a material issue of fact as to those issues, but only as to those issues."

*Id*. at 326. The explanation comes from ORCP 47 C, which provides that the party opposing summary judgment need only respond with contrary evidence to create a dispute of fact, so as to prevent summary judgment, with regard to those issues that the moving parties first raised. *Id*. at 325. The same principle was followed in *Eklof v. Steward*, 360 Or 717, 729-35, 385 P3d 1074 (2016), where the court determined that a post-conviction court erred in granting summary judgment to the state where the motion had presented only a pleading issue and had not required the petitioner to come forward with contrary facts to create a genuine issue of material fact.

In this case, unlike in *Two Two* or *Eklof*, the argument made by the district did not raise a factual issue that plaintiff could have controverted by coming forward with contrary evidence. Instead, it was purely a legal issue—and one of a special nature—a jurisdictional issue. We have observed, "subject matter jurisdiction is never waived and can be raised by any party or by the court *sua sponte* at any stage of the proceedings." *Weatherspoon v. Allstate Ins. Co.*, 193 Or App 330, 333, 89 P3d 1277 (2004) (considering procedural challenge to award of attorney fees). Generally, "Oregon courts have subject matter jurisdiction over disputes if the constitution, a statute, or the common law tells them to do something about the specific kind of dispute presented." *Mount Hood Community College v. Federal Ins. Co.*, 199 Or App 146, 152, 111 P3d 752 (2005) (citing *School Dist. No. 1, Mult. Co. v. Nilsen*, 262 Or 559, 566, 499 P2d 1309 (1972)). Yet, there may be situations in which the legislature has "divest[ed] courts of subject matter jurisdiction." *Id*. (considering the effect of contractor licensing requirements).

In this situation, the Public Employees Collective Bargaining Act (PECBA) does just that when vesting exclusive jurisdiction with ERB. *See, e.g., Ahern v. OPEU*, 329 Or 428, 431, 988 P2d 364 (1999) (ERB has exclusive jurisdiction where element of tort alleges a ULP); *see also Tracy v. Lane County*, 305 Or 378, 380, 752 P2d 300 (1988) (ERB has exclusive jurisdiction to determine sufficiency of arbitration award). Accordingly, the trial court did not err in considering the district's jurisdictional issue, even if raised in a reply memorandum. Although not made clear until then, plaintiff did not ask for more time to address the issue; and the parties had a full opportunity to debate the issue at the hearing on the motion.

## EXCLUSIVE JURISDICTION

That determination brings us to plaintiff's second and third assignments challenging the court's conclusion that it lacked jurisdiction. When deciding whether a court has subject matter jurisdiction over a claim, we review for legal error. *Black v. Coos County*, 288 Or App 25, 29, 405 P3d 178 (2017). To decide whether plaintiff's claims are within the exclusive jurisdiction of ERB, we consider the terms of the PECBA, ORS 243.650 to 243.782. We also consider the case law that has construed the Act. *See State v. McAnulty*, 356 Or 432, 441, 338 P3d 653 (2014) (regarding prior construction of the statutes at issue); *State v. Cloutier*, 351 Or 68, 100, 261 P3d 1234 (2011) (prior construction of statute or predecessors).

PECBA is a comprehensive regulatory scheme for resolving labor disputes in the public sector. *Ahern*, 329 Or at 434. It is addressed to both individual and collective rights related to collective bargaining. *Black*, 288 Or App at 30. At the center of that statutory scheme, ERB is authorized to investigate, hear, and resolve claims of unfair labor practices (ULPs), whether committed by public employers, individuals, or labor organizations. *Id.* Among the potential unlawful practices is a breach of contract—the allegation presented in this case. In relevant part, ORS 243.672(1) provides:

"It is an unfair labor practice for a public employer or its designated representative to do any of the following:

"\* \* \* \* \*

   "(g)   Violate the provisions of any written contract with respect to employment relations[.]"

In such situations, ERB has "exclusive jurisdiction to determine whether an unfair labor practice has been committed." *Ahern*, 329 Or at 434.

   Plaintiff suggests that the task of discerning when a claim is not subject to ERB's exclusive jurisdiction is as easy as identifying a claim as a common-law claim. In her view, Oregon's case law indicates that common-law claims are not subject to ERB jurisdiction. We consider the leading cases in turn.

   Plaintiff's primary authority, *Shockey v. City of Portland*, 313 Or 414, 417, 837 P2d 505 (1992), *cert den*, 507 US 1017 (1993), was an employee's action against his employer and others for the common-law tort of wrongful discharge and a civil rights or free-speech violation under 42 USC section 1983. The court assumed without deciding that wrongful discharge would violate the "just cause" provision of the collective bargaining agreement as a breach of contract under ORS 243.672(1)(g). *Id.* at 419. The court perceived no reason to say that the claim for wrongful discharge offended PECBA. *Id.* at 421. Recognizing that the tort provided additional remedies (*i.e.*, noneconomic damages), the court concluded that the circuit court had subject matter jurisdiction over the common-law wrongful discharge claim. *Id.* at 422.[4]

   If case law had stopped with the *Shockey* decision, plaintiff's simple rule—excluding common-law claims from ERB jurisdiction—might well be plausible. However, plaintiff ignores *Ahern*, a more recent decision. *Ahern* returned to the question of ERB jurisdiction when "an element" of a common-law claim involves conduct that constitutes an unresolved or undecided ULP. 329 Or at 433. The plaintiff was a county commissioner who owned a market. *Id.* at 431. County employees went on strike against the county.

---

[4] The court rejected the civil rights claim on its merits, concluding that there was no matter of "public concern" in a safety rule against employees having beards. *Id.* at 430-31.

*Id.* In an informational effort, union members picketed and distributed leaflets at the plaintiff's store. *Id.* The plaintiff filed an action alleging a tort claim for intentional interference with economic relations. *Id.* As the required element of wrongful means or motive, the plaintiff alleged that the picketing constituted a ULP in violation of what is now ORS 243.672(4) (*i.e.*, a secondary boycott). He sought damages and a preliminary and permanent injunction. *Id.* at 432. The trial court granted the preliminary injunction, and the union appealed. *Id.*

The Supreme Court ordered the parties to show cause why the case should not be dismissed on the ground that the trial court lacked jurisdiction to determine an element of the tort claim that posed a question of a ULP. *Id.* The plaintiff responded that his claim was merely a common-law tort claim, which was not a matter subject to ORS 643.120 or PECBA. *Id.* at 430. He argued that the case was just a tort action between two private parties, in which he sought damages for the union's tortious actions. *Id.* at 432-33. The court observed that

> "[d]espite its tort label, the gravamen of plaintiff's complaint is that OPEU has committed an unfair labor practice. In determining whether it has authority to decide a matter, a court must consider the nature of the matter, not the label that a party has placed on it."

*Id.* at 436. Coincidentally, the court cited *Shockey* in making that statement. *See* 313 Or at 418-19 (concerning methodology for determining whether statutory scheme abrogates a common-law remedy). The court indicated that it had no doubt that the legislature intended ERB to have exclusive jurisdiction to determine whether an unfair labor practice had been committed. *Ahern*, 329 Or at 434-35. The court explained:

> "Permitting the trial court to determine, in the course of a tort proceeding, whether an unfair labor practice has occurred would create the danger of inconsistent rulings ***. We hold that the trial court lacks jurisdiction to adjudicate, in the proceeding before it, whether OPEU has committed an unfair labor practice under ORS 243.672(2)(g)."

*Id.* at 436. The court vacated the injunction and remanded the case—presumably for the dismissal contemplated by the show cause order. *Id.* at 437.[5]

Plaintiff prefers our more recent decision in *Black*, arguing that it supports her view that a common-law claim—particularly one that does not expressly allege a ULP as an element of a claim—is not within ERB's exclusive jurisdiction. Plaintiff, however, reads *Black*, too broadly.

In that case, the plaintiffs were dispatchers or telecommunication specialists in the county sheriff's office who had been mistakenly grouped as "police and fire" employees for purposes of the state's Public Employee Retirement System (PERS). *Black*, 288 Or App at 27. They alleged that, while considered to be in that category, they had made additional personal contributions as permitted for that group. *Id.* After a correction was made to their PERS category, they brought claims against the county for negligent misrepresentation and unjust enrichment, asserting that their mistaken, personal contributions had not been returned and that, essentially as consequential damages, they had lost other, personal money in reliance on the promise of better benefits as future "police and fire" retirees. *Id.* at 28. The trial court dismissed the claims as subject to ERB's exclusive jurisdiction on the ground that the claims involved a matter of "*monetary benefits* alleged to be payable from" the county. *Id.* at 28-29 (emphasis in original).

On appeal, we observed that the plaintiffs did not sue PERS, nor seek a change in their retirement category; they did not allege any breach of their collective bargaining agreement; they did not allege any ULP or violation of PECBA; and they did not seek pay or benefits from the county. *Id.* at 28, 33. We rejected the county's argument

---

[5] In *Tracy*, 305 Or 378, the court determined that ERB had exclusive jurisdiction to determine whether the refusal of a public employer to comply with an arbitration award was an unfair labor practice. In making that decision, ERB could decide whether the award was supported by substantial evidence. *Id.* at 380-81; ORS 243.752(1). Further, ORS 243.752(1) provided that ERB's order upholding the award should be enforced in circuit court. 305 Or at 380-81. Therefore, the disposition in that unique circumstance was not to dismiss but to remand the plaintiff's claims to the circuit court to abate them until ERB issued an order to be enforced. *Id.* at 382-83.

that the claims implicated ORS 243.672(1)(f), which involve a ULP under a catch-all provision for a violation of other terms of PECBA. *Id.* at 32. No particular violation had been identified. We also rejected the county's argument that the claims involved a breach of contract under ORS 243.672(1)(g). Nothing implicated a collective bargaining agreement. *Id.* at 33-34. Finally, we rejected the county's loose or ungrounded reference to definitions of "employment relations" or "labor disputes" in ORS 243.650(12) and ORS 243.650(7)(a) (respectively). *Id.* We recognized that the plaintiffs' claims "have nothing to do with collective bargaining or any individual, collective, or employer rights governed by PECBA." *Id.* at 34.

In the part of our opinion most relevant to plaintiff's argument here, *Black* distinguished *Ahern*, explaining that

> "[plaintiffs'] complaints do not indirectly allege any ULP; and nothing alleged in the common-law claims depends, as a predicate, upon any determination of the sort to be made by ERB."

*Id.* at 35. We concluded that

> "plaintiffs' claims raised no issues relating to individual or collective rights of collective bargaining within the scope of PECBA's general policy terms. Plaintiffs' claims raised no issues that ERB could review as ULPs or an employer's violation of PECBA."

*Id.* at 36. We reversed and remanded for the tort claims to proceed. *Id.* We did so only because the tort claims of those plaintiffs had not raised any issues subject to ERB jurisdiction. *Id.* We did not do so, as plaintiff here perceives, because all common-law claims are categorically beyond ERB's exclusive jurisdiction.

Turning back to this case, we appreciate that, unlike the plaintiff in *Ahern*, plaintiff here did not plead as an element of her claims an explicit reference to a ULP under PECBA; and we appreciate that, like the plaintiffs in *Black*, she has pleaded common-law claims. However, we take from *Ahern* that, "[d]espite its tort label, the gravamen of plaintiff's complaint" is determinative; "a court must

consider the nature of the matter, not the label a party has placed on it." 329 Or at 436. Also, it is enough that "an element" of a common-law claim poses an issue that must be resolved by ERB. *See id.* at 433 (the jurisdictional question presented is whether "an element of [plaintiff's] claim" is a ULP).

In this case, the common allegations of plaintiff's complaint are that she was given the duties of a teacher although "she was improperly classified as an Educational Assistant." Her individual contract—the Notice of Initial Hiring Conditions—was expressly subject to the collective bargaining agreement governing classified employees within the Oregon School Employees Association, Chapter 15. Plaintiff acknowledged that compensation and the classification of jobs is a scheme "governed by the collective bargaining agreement that is negotiated between the classified [employees] union and the school district." Consistent with her acknowledgement, the record reflects that the CBA provides a process involving the Position Review Committee and the joint Labor Management Team for the purpose of reviewing situations in which an employee's duties no longer conform to her job description. There is no dispute that plaintiff pursued that remedy, although the results were not what she hoped. Plaintiff was not given a reclassification and rewritten job description; she was relieved of extra responsibility; and the teaching duties were reassigned. Those circumstances reflect that the duties wrongfully imposed on plaintiff were a problem that was addressed, although not to plaintiff's satisfaction, by a process provided by plaintiff's labor organization and the school district.

After incorporating the common allegations of her complaint into her specific allegations, plaintiff pleaded four specific claims: breach of contract, promissory estoppel, unjust enrichment, and breach of a duty of good faith and fair dealing. Unlike in *Ahern*, those claims do not involve a mere element that happens to be a ULP; rather, the claims *in their entirety* allege a ULP. The claims all presuppose the problem of imposing work different than that properly demanded of an educational assistant. Therefore, the gravamen of plaintiff's claims is a breach of the CBA—regardless

how the claims may be pleaded or recharacterized. *See Ahern*, 329 Or at 436 (It is "the nature of the matter, not the label that a party has placed on it.").

Plaintiff expressed that point best in her deposition testimony. She was asked, and she answered:

"Q: *** I'm not asking you for you to give a legal statement, but I am asking to the best of your knowledge and understanding which contract you believe has been breached. And I'll start by asking: To the best of your knowledge and understanding, do you believe the collective bargaining agreement between your bargaining unit and the school district has been breached?

"*****

"A: I believe the breach is not between the union and the school district, but between my job description and my job duties that I was given for the 12 years that I was a teacher.

"Q: So the contract you are asserting has been breached is the job description that the school district provided you for the educational assistant in the computer lab position?

"A: Yes, to my knowledge."

Put in other words, the contract alleged to be breached is plaintiff's individual contract to perform the limited duties of a position described as an educational assistant; and that contract is a part of the compensation and classification scheme of the CBA between the district and the local OSEA chapter.

As noted at the outset, an employer's breach of a CBA is a ULP under ORS 243.672(1)(g). If plaintiff believed that the district breached its agreement with her by imposing work beyond her job description, she could have pursued her reclassification request before the joint Labor-Management Team. Or, if that process failed her, she could have filed a charge with ERB asserting the breach-of-contract form of a ULP. *See Ahern*, 329 Or at 436.

Because the gravamen of plaintiff's complaint is a breach of the CBA that would constitute a ULP under PECBA, it is an issue within the exclusive jurisdiction of

ERB. *See id.* at 436-37 (element of claim was a ULP issue). The alternative—to have proceeded in circuit court on the same issue—would have posed a risk of inconsistent results that, when adopting PECBA, the legislature did not intend. *See Tracy*, 305 Or at 382 (explaining justification for exclusive jurisdiction). Like the trial court, we agree that this dispute was a matter within ERB's exclusive jurisdiction.

## CONCLUSION

The trial court did not err in determining that it lacked jurisdiction to entertain plaintiff's complaint.

Affirmed.