Argued and submitted November 21, 2008, judgments vacated; remanded with
instructions to dismiss August 12, 2009

AMERICAN PROPERTY MANAGEMENT
CORPORATION,
acting by and through
Jim Robinson, agent,
*Plaintiff-Respondent,*

*v.*

NIKAIA,
*Defendant-Appellant.*

Multnomah County Circuit Court
07F003618; A135561

215 P3d 906

Harry D. Ainsworth argued the cause and filed the brief for appellant.

Frank Wall argued the cause and filed the brief for respondent.

Before Wollheim, Presiding Judge, and Armstrong, Judge, and Sercombe, Judge.

ARMSTRONG, J.

**ARMSTRONG, J.**

In this forcible entry and detainer (FED) action, defendant appeals a general judgment awarding plaintiff restitution and a supplemental judgment awarding plaintiff costs and attorney fees. The sole issue on appeal is whether plaintiff, through its rental agreement, complied with the mail and attachment (or so-called nail and mail) service and notice requirements in ORS 90.155(1)(c). We conclude that plaintiff's rental agreement did not comply with the statutory requirements. Accordingly, we vacate the judgments and remand.

The relevant facts are not in dispute. Defendant, a tenant in a residential property located in Portland, entered into a rental agreement with plaintiff. Defendant failed to pay his February 2007 rent by the seventh of the month, as required by the rental agreement. On February 8, plaintiff issued a 72-hour notice to defendant to terminate the rental agreement for failure to pay rent and served it on defendant by mailing a copy of the notice to defendant at his residence and by posting a second copy on defendant's front door. Defendant's rent remained unpaid, and plaintiff initiated this FED action against defendant. After trial, the court entered a general judgment against defendant awarding plaintiff restitution of the premises, and a supplemental judgment awarding plaintiff its attorney fees and costs.

On appeal, defendant argues that plaintiff's rental agreement failed to provide defendant with a "meaningful" reciprocal right to use nail and mail service, as required by ORS 90.155(1)(c). He asserts that, because of that deficiency, plaintiff did not have a right to use nail and mail service, and, as such, the trial court erred in entering judgment in plaintiff's favor.

ORS 90.155(1) sets forth the requirements for service of a written notice, when such notice is required between landlords and tenants. In addition to personal service and service by mail, the statute provides:

"(c)   If a written rental agreement so provides, [service or delivery of written notice shall be executed by] both first class mail and attachment to a designated location. In order

for a written rental agreement to provide for mail and attachment service of written notices from the landlord to the tenant, the agreement must also provide for such service of written notices from the tenant to the landlord."

ORS 90.155(1)(c). In other words, the statute requires reciprocal mail and attachment, so that, if a landlord can notify a tenant by mail and attachment service, then a tenant can serve a landlord in the same manner. *Guardian Management, LLC v. Zamiello*, 194 Or App 524, 528, 95 P3d 1139 (2004). The primary benefit of that service is that the date of the notice itself is the date on which it is served, ORS 90.160(2), whereas service by first class mail without attachment requires the party serving the notice to extend the recipient's period of compliance by three days, ORS 90.155(2).

Further, that statute prescribes the manner in which the mail and attachment service must occur:

"(A)   For written notices from the landlord to the tenant, the first class mail notice copy shall be addressed to the tenant at the premises and the second notice copy shall be attached in a secure manner to the main entrance to that portion of the premises of which the tenant has possession; and

"(B)   For written notices from the tenant to the landlord, the first class mail notice copy shall be addressed to the landlord at an address as designated in the written rental agreement and the second notice copy shall be attached in a secure manner to the landlord's designated location, which shall be described with particularity in the written rental agreement, reasonably located in relation to the tenant and available at all hours."

ORS 90.155(1)(c).

The rental agreement between the parties here has a notice provision in paragraph 21 that states:

"**Notice**: In accordance with [ORS] 90.155, written notices served by both the Owner/Agent/Lessor and Resident are effective on the date in which they are mailed by first class mail addressed to the Resident or Owner/Agent/Lessor at the street address of the premises and attached in a secure manner to the main entrance of

the Resident's premises or the Owner/Agent/Lessor's place of business."

(Emphasis in original.) Plaintiff is identified as the "Owner/Agent/Lessor" on the front of the agreement.

Defendant argues that paragraph 21 is too confusing to provide meaningful reciprocal nail and mail service rights to a tenant in defendant's position. He argues that plaintiff fails to identify a "designated location" for either first class mail or attachment or, for that matter, the designated location for service based on which party is sending the notice, and that the paragraph is so poorly worded that it would permit the illogical result that tenants mail notice to themselves at their own addresses and post notice on their own front doors. In response, plaintiff argues that paragraph 21 complies with ORS 90.155 because it adequately designates the addresses for tenant to mail and to attach notice. It further asserts that, to the extent that either method of notice is likely to fail to provide meaningful notice to it, it has a right to waive its rights to statutory notice.

Although the parties focus on the portion of the statute requiring that the location for posting be "described with particularity," ORS 90.155 sets forth separate requirements for the copy of notice to be mailed and to be attached at a given location. Thus, we begin by looking at ORS 90.155's first requirement, that the copy of notice that the tenant mails to the landlord be "addressed to the landlord at an address as designated in the written rental agreement," and assessing whether the rental agreement here complies with that portion of the statute.

To determine whether plaintiff's rental agreement complies with ORS 90.155(1)(c)(B), we ascertain the legislature's intent by first considering the statutory text in its context, along with legislative history. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). As an initial matter, the portion of the text prescribing that the notice be "addressed to the landlord" is clear—the landlord is to be the designee of the mailed notice. It is the portion, however, stating that it be "at an address as designated in the written rental agreement" that requires somewhat more analysis. Taken on its

own, that language could be read to permit that the designated first class mail address be any address—real or fictional—so long as the notice is mailed with the landlord as the designee at an address "designated" in the rental agreement.

However, context, including other provisions within the statute, *see State v. Carr*, 319 Or 408, 411-12, 877 P2d 1192 (1994), is helpful here. We begin with subparagraph (A) in ORS 90.155(1)(c), which prescribes that notice from a landlord to a tenant be "addressed to the tenant at the premises." Clearly, that language requires that the tenant be the addressee, and the first class mail copy of the notice be addressed to the premises, that is, the address where the tenant lives and is reasonably expected to receive such mail. In other words, that language appears to be directed at getting effective notice from the landlord to the tenant by first class mail.

In light of that language, then, it is illogical to construe subparagraph (B) to allow the first class mail copy of the notice from a tenant to a landlord to go to *any* designated address, particularly if that address will not provide the landlord with notice. Moreover, we cannot identify a sensible reason why the legislature, in one subparagraph, would require a landlord's notice to go to a tenant at the tenant's premises, but would then permit, in the subsequent subparagraph, the tenant's notice to go to *any* address, so long as the landlord is the addressee. Rather, the most sensible reading of ORS 90.155(1)(c)(B) is in harmony with subparagraph (A) and requires a tenant to mail to an address where a landlord would receive its first class mail. Indeed, that conclusion is the only result that is consistent with the underlying rationale for the 1997 amendments to ORS 90.155 extending reciprocal rights to tenants to use nail and mail service. *Guardian Management, LLC*, 194 Or App at 528 (discussing the 1997 amendments to ORS 90.155). If the legislature intended to expand that right reciprocally to tenants, it must have intended the first class mail requirement to be effective, not a meaningless or futile exercise in which tenants mail notice to locations where the landlord will not receive that notice.

With that understanding in mind, we turn to the language in the rental agreement describing the first class mail portion of the nail and mail service. According to the rental agreement here, a tenant's notice sent by first class mail needs to be "addressed to the Resident or Owner/Agent/Lessor at the street address of the premises." There appear to be at least two problems with that designation. First, tenants apparently may designate themselves as the recipients of the notice, which clearly does not comport with ORS 90.155(1)(c)(B). More importantly, however, even if a tenant addresses the notice to the Owner/Agent/Lessor, the designated address is "the street address of the premises," that is, the *tenant's* address. In other words, paragraph 21 requires tenants to mail first class notice to their own premises. As such, based on our construction of ORS 90.155(1)(c)(B), plaintiff did not properly designate an address for first class mail that comports with the statute.

Plaintiff argues that, to the extent that that manner of notice is likely to be ineffective, a landlord may waive notice, and invokes *Skourtes v. Schaer*, 36 Or App 659, 585 P2d 703 (1978), *rev den*, 285 Or 319 (1979), for support. We disagree that *Skourtes* is availing here. In *Skourtes*, the tenant had given her landlord 20 days' advance oral notice of termination; the landlord accepted the tenant's notice and waived the statutorily required written notice and the full 30-day notice period. The landlord later secured a judgment in an FED action when the tenant failed to vacate the premises by her stated termination date; the tenant appealed, arguing, in part, that her own termination notice was defective and that the FED action should have been dismissed. *Id.* at 661-62. We affirmed, concluding that the notice period and writing requirements were for the landlord's benefit, and, as such, the landlord "was entitled to waive the statutory right to receive more." *Id.* at 663.

Here, we are not confronted with circumstances in which we are determining whether a landlord may waive statutory rights that wholly benefit it. ORS 90.155(1)(c) directs that nail and mail service be reciprocal for all instances where written notice is required, and, in some of those instances, the writing and notice provisions benefit

both the tenant and the landlord. Aside from termination, for example, a tenant must give written notice to a landlord before causing the repair of a minor habitability defect for which the tenant can be reimbursed up to a certain amount, ORS 90.368. Tenants also may provide written notice in other situations, such as landlord noncompliance with the rental agreement, ORS 90.360, and failure to supply essential services, ORS 90.365. In those situations, the timing provisions of the notice benefit both the landlord and the tenant, inasmuch as the landlord has the opportunity to remedy the complaint without terminating the lease, and the tenant has the ability to seek timely fulfillment of the landlord's obligation and to terminate the lease within a particular period of time if the landlord fails to comply. Here, the notice provision in the rental agreement does not merely affect a landlord's right to receive written notice and observe notice periods; it implicates a tenant's rights to communicate with a landlord, which a landlord cannot waive on a tenant's behalf.

Moreover, given that the legislature expressly requires that a landlord extend reciprocal nail and mail service to a tenant, it is counterintuitive to construe the language in ORS 90.155(1)(c) in a way that would permit a landlord to implicitly waive that requirement by designating an illogical, nonexistent, or wholly ineffective location for a tenant to mail his or her notice. We cannot conclude that a provision requiring tenants to mail notice to themselves effectuates the legislative intent of ORS 90.155(1)(c). Thus, the rental agreement does not comply with ORS 90.155(1)(c). Accordingly, we need not address the parties' arguments about the adequacy of the rental agreement's designation of a proper location for attachment.

We recognize that a landlord that manages multiple properties, such as one in plaintiff's position, may wish to use a uniform rental agreement for convenience and economy. However, we do not believe that the requirements set forth in ORS 90.155(1)(c) are particularly taxing so as to preclude a landlord's ability to provide a clear and effective method for its tenants to effectuate nail and mail service. Here, plaintiff failed to fulfill those requirements. Hence, plaintiff was not

entitled to serve notice on defendant using mail and attachment. Because that service was defective, the trial court erred by not dismissing the FED action.

Judgments vacated; remanded with instructions to dismiss.