Argued and submitted February 10, 2015; on appeal, reversed and remanded as to plaintiffs' trespass claim and award of attorney fees and costs, otherwise affirmed; on cross-appeal, affirmed October 12, 2016

David V. MARLOW
and Sandy L. Marlow,
husband and wife,
*Plaintiffs-Respondents
Cross-Appellants,*

*v.*

CITY OF SISTERS,
*Defendant-Appellant
Cross-Respondent.*

Deschutes County Circuit Court
CV110800; A155780

383 P3d 908

Robert E. Franz, Jr. argued the cause for appellant-cross-respondent. With him on the briefs was Law Office of Robert E. Franz, Jr.

Martin E. Hansen argued the cause for respondents-cross-appellants. With him on the briefs were Sarah E. Harlos and Francis Hansen & Martin LLP.

Before Sercombe, Presiding Judge, and Hadlock, Chief Judge, and Tookey, Judge.

**HADLOCK, C. J.**

This case arises from a dispute over use and ownership of a tract of land (tract 9) that measures 40 feet by 140 feet and that is located to the north of (and beneath) Main Avenue, an east-west street in Sisters, Oregon. The southernmost part of tract 9—a strip that measures 15 feet by 140 feet—is closely associated with Main Avenue; indeed, most of that south strip is paved as part of the street, as depicted in this rough sketch, which is not to scale:

Tract 9

North 25' x 140' strip

South 15' x 140' strip

Main Avenue

Believing that it owned both the south strip of tract 9 on which Main Avenue is located, and also the strip measuring 25 feet by 140 feet that runs along the north side of Main Avenue, defendant constructed improvements on the north strip, including a sidewalk. In the process of doing so, defendant removed two trees. Plaintiffs, who own property to the north of tract 9, later determined that they owned the land on which defendant had constructed the sidewalk and from which it had removed trees, and they sued defendant for trespass. Plaintiffs also sought to quiet title to the entirety of tract 9, which they claimed to own. The case was tried to the court, and defendant moved for a directed verdict on plaintiffs' trespass claim. The trial court implicitly denied that motion and, in a general judgment, (1) entered judgment in plaintiffs' favor on the trespass claim following trial, (2) awarded plaintiffs damages, costs, and attorney fees, (3) quieted title in plaintiffs' favor on the north strip, (4) ruled that defendant has a prescriptive easement for its sewer line on that strip, and (5) quieted title in defendant's favor on the south strip.

On defendant's appeal, we reverse the judgment in favor of plaintiffs on the trespass claim for the reasons set out below. On plaintiffs' cross-appeal, challenging the trial court's grant of a prescriptive easement to defendant for its sewer line, we affirm without discussion.

Defendant's appeal challenges the trial court's denial of its motion for directed verdict on the trespass claim. Because defendant made that motion in the context of a bench trial, it is more properly characterized as an ORCP 54 B(2) motion for involuntary dismissal. *See Castro and Castro*, 51 Or App 707, 710, 626 P2d 950 (1981) ("ORCP 54 B(2) is the rule allowing a motion to dismiss to test the sufficiency of evidence at the close of plaintiff's case in nonjury cases; ORCP 60 allows a motion for directed verdict to test the sufficiency of the evidence at the close of plaintiff's case in jury cases."). We review the trial court's denial of that motion, "'[v]iewing the evidence and all reasonable inferences that may be drawn from it in the light most favorable to plaintiff.'" *Fowler v. Cooley*, 239 Or App 338, 344, 245 P3d 155 (2010) (quoting *Thorson v. Dept. of Justice*, 171 Or App 704, 710, 15 P3d 1005 (2000)). We describe the pertinent facts in accordance with that standard.

In November 1998, plaintiffs purchased several tracts of undeveloped land in Sisters, including tract 9.[1] At that time, the legal description in the deed included the northern strip of land at issue.

Sometime before April 2010, defendant decided to construct improvements—sidewalks, curbs, and paved parking—along Main Avenue in the north strip of tract 9. It is undisputed that defendant believed that the land upon which the improvements were to be installed was land that defendant owned or across which it had a right-of-way. Marlow testified at trial that he, too, believed that defendant had a right-of-way on the property. As discussed below, those beliefs later proved incorrect.

---

[1] Plaintiff David Marlow testified at trial; plaintiff Sandy Marlow did not. Nor was any pertinent evidence involving Sandy Marlow introduced at trial. Accordingly, all references to "Marlow" in this opinion are to David Marlow. We use the term "plaintiffs" to refer to David and Sandy Marlow collectively.

In April 2010, Marlow met with Grimm, defendant's Public Works Director, to discuss defendant's proposed improvements. Plaintiffs did not object to those improvements, including installation of the sidewalk and parking spaces. During the meeting, Marlow and Grimm discussed the fate of two trees located on the north strip of tract 9. Marlow explained at trial why he ultimately agreed to have the trees removed.

> "[Plaintiffs' Attorney]: Okay. And did [defendant] ask your opinion of whether or not they should leave the trees as part of their projects or not?

> "[Marlow]: They gave me a proposal to—as a tradeoff, to trade off parking spaces for the trees. And since they presented it as being in the city right-of-way, I opted for the parking spaces.

> "* * * * *

> "[Marlow]: I agreed to the tradeoff that it was either lose parking spaces or take the trees out, and I opted to go for the parking spaces * * *."

Grimm testified that he relied on Marlow's statement that he preferred to have the trees removed, rather than lose parking spaces. Plaintiffs made no objection to the improvements until June 2010, after defendant had completed the improvements. At that point, Marlow protested only the use of concrete for the sidewalk, instead of pavers.

An architect told Marlow in September 2010 that plaintiffs "may still own" the north strip of tract 9. That prompted Marlow to draft a letter to defendant requesting proof that defendant owned that strip. Defendant did not respond to the letter for over four months. Meanwhile, in January 2011, plaintiffs and defendant signed a reimbursement assessment relating to defendant's installation of the improvements. The assessment expressly stated that "[defendant] has completed improvements along its right-of-way including the construction of parking, drainage, curbs and sidewalks."

About a month later, plaintiffs received a letter from defendant's city manager responding to Marlow's September 2010 letter; the city manager asserted that defendant owned

the entirety of tract 9 and enclosed a copy of the title report upon which defendant relied. In April 2011, plaintiffs notified defendant of their intent to sue for trespass. They filed their initial complaint in June 2011, alleging, in relevant part, a trespass claim.[2] In their complaint, plaintiffs asserted that defendant trespassed on plaintiffs' land by "constructing asphalt and street curbing and sidewalks on plaintiffs' property, and removing trees located on plaintiffs' property without permission." Plaintiffs sought damages and attorney fees.

The case, including plaintiffs' trespass claim, was tried to the court without a jury. As noted, the trial court quieted the title in plaintiffs' favor on the north strip (with a prescriptive easement for defendant's sewer line) and quieted title in defendant's favor on the south strip. With respect to the trespass claim, defendant moved at trial and in post-trial briefing for a directed verdict, contending that plaintiffs had failed to prove that they provided timely notice under the Oregon Tort Claims Act (OTCA) and, alternatively, that plaintiffs' consent to construction of the improvements barred their claims for trespass. The trial court issued a written opinion in which it rejected both of defendant's arguments. With respect to defendant's contention that plaintiffs had consented to defendant's actions in making the improvements, the court concluded that defendant's argument failed because plaintiffs' consent "was based on mistaken belief held by all parties that Defendant owned the [north strip]."

Ultimately, the trial court entered a judgment in favor of plaintiffs on the trespass claim for damages related to the cutting and removal of the two trees and an additional sum to be paid by defendant in the event that defendant failed to remove all improvements within 60 days of entry of the judgment and money award. The court also awarded

---

[2] Plaintiffs' complaint (like their later-filed first amended complaint) alleged a single claim for trespass, labeled "Trespass to Real Property." Within that claim, however, they included allegations that defendant had unlawfully removed trees from plaintiffs' land and that plaintiffs were, therefore, entitled to damages under "Oregon's Timber Trespass statutes." We refer to plaintiffs' ordinary trespass allegations and the timber-trespass allegations collectively as forming plaintiffs' trespass claim.

plaintiffs costs and attorney fees over defendant's objection. Defendant timely appealed and, on appeal, largely reiterates the arguments it made below.

"On appeal of a denial of an ORCP 54 B(2) motion to dismiss a claim, we review the entire record to determine whether sufficient evidence was presented to establish a *prima facie* case on the applicable claim, viewing the evidence and all reasonable inferences that may be drawn from it in the light most favorable to plaintiff." *Fowler*, 239 Or App at 344 (internal quotation marks and brackets omitted); *see Wilmoth v. Ann Sacks Tile and Stone, Inc.*, 224 Or App 315, 332 n 7, 197 P3d 567 (2008), *rev den*, 346 Or 185 (2009) (The Court of Appeals "would review the denial of defendants' motion for a directed verdict—which we would treat as a motion for a judgment of dismissal under ORCP 54 B(2)—to determine whether plaintiff made a *prima facie* case."). In doing so, we review the trial court's legal conclusions for errors of law. *Mount Hood Community College v. Federal Ins. Co.*, 199 Or App 146, 149, 111 P3d 752 (2005).

In this case, then, our task is to determine whether the record, considered in its entirety, includes evidence sufficient to establish a *prima facie* case of trespass. As explained below, we agree with defendant that the evidence of plaintiffs' consent to defendant's trespass prevents them from making out that *prima facie* case. Because defendant's consent-based argument is dispositive, we do not address its alternative argument that plaintiffs failed to establish that their tort claim notice was timely under the OTCA.

Defendant's consent-to-trespass argument is premised on two points, one legal and one factual. First, defendant argues as a legal matter that a landowner's consent to another person's trespass "is a complete defense to a trespass action," even when both the trespasser and landowner mistakenly believe that the trespasser owns the land at issue. Second, defendant asserts that plaintiffs essentially concede, as a factual matter, that they consented to the trespass; defendant contends that plaintiffs' argument is premised on an incorrect assertion that their consent was invalid because it was based on a mistake about who owned the north strip of tract 9.

Defendant is correct on both points. Taking the factual issue first, plaintiffs do not deny that they consented to defendant constructing improvements on the north strip, and the evidence in the record pertaining to consent is undisputed. Testimony from Marlow and Grimm reveals that plaintiffs knew defendant's complete plan for defendant's proposed improvements before construction commenced. Moreover, the testimony describing Marlow's meeting with Grimm demonstrates that Grimm offered plaintiffs a "tradeoff." As Marlow testified, "I agreed to the tradeoff that it was either lose parking spaces or take the trees out, and I opted to go for the parking spaces." Marlow's interactions with Grimm indicated a "willingness in fact for [the improvements] to occur." *Restatement (Second) of Torts* § 892(1) (1979) ("Consent is willingness in fact for conduct to occur."). Thus, the evidence in the record, even viewed in the light most favorable to plaintiffs, establishes that plaintiffs consented as a factual matter to construction of the improvements on the north strip of tract 9.

Given that state of the record, plaintiffs wisely dispute only the legal point on which defendant relies: defendant's contention that plaintiffs' consent bars their trespass action even though it was based on their mistaken belief that defendant owned the north strip of tract 9. Plaintiffs observe, correctly, that the record includes evidence that defendant told them that defendant owned the land. They argue that because defendant's representations were "false," their consent to defendant's construction of improvements does not bar their trespass claim.

We begin our analysis of the parties' arguments by considering basic trespass principles. A trespass occurs when a person "enters or remains on premises in the possession of another *without a privilege* to do so." *Rich v. Tite-Knot Pine Mill*, 245 Or 185, 191, 421 P2d 370 (1966) (emphasis added). A privilege to enter may be "created by the possessor's consent or otherwise." *Id.*; *see also Colmus v. Sergeeva*, 175 Or App 131, 135, 27 P3d 166 (2001) ("Consent may constitute a privilege to trespass if there is evidence of actual willingness on the part of the landowner to have the trespasser engage in the particular type of entry."). Thus, a plaintiff can make out a *prima facie* case for trespass only

if it presents evidence that it did not consent to the defendant's complained-of entry onto its land or that the defendant otherwise lacked a privilege to enter. In this case, the parties' arguments focus solely on consent; plaintiffs contend they did not effectively consent to defendant's entry, and defendant urges the contrary.

In pressing their arguments, defendant and plaintiffs all rely on section 892B of the *Restatement (Second) of Torts*, which describes when a party's consent to trespass is effective. That reliance is appropriate, as we, too, have relied on the *Restatement* in describing common trespass principles, including those related to consent, and nothing in our cases suggests any tension between Oregon trespass law and the common law as the *Restatement* describes it. *See Currier v. Washman, LLC*, 276 Or App 93, 100, 366 P3d 811 (2016) (citing a comment to *Restatement* section 892 in describing what type of conduct may indicate consent to entry on land); *Hager v. Tire Recyclers, Inc.*, 136 Or App 439, 443, 901 P2d 948 (1995), *adh'd to as modified on recons*, 138 Or App 120, *rev den*, 323 Or 690 (1996) (relying on *Restatement* sections 892 and 892A for the principle that, "[t]o establish that a possessor has consented to the entry of another, there must be evidence of 'willingness in fact' that the 'particular conduct' that constitutes entry may occur"); *see also Johnson v. Jones*, 269 Or App 12, 21, 344 P3d 89 (2015) (citing *Restatement* section 892B for the proposition that "[c]onsent [to a battery] produced by material nondisclosure is no consent at all").

*Restatement* section 892B provides:

"(1)   Except as stated in Subsection (2), consent to conduct of another is effective for all consequences of the conduct and for the invasion of any interests resulting from it.

"(2)   If the person consenting to the conduct of another is induced to consent by a substantial mistake concerning the nature of the invasion of his interests or the extent of the harm to be expected from it *and the mistake is known to the other or is induced by the other's misrepresentation*, the consent is not effective for the unexpected invasion or harm.

"(3)   Consent is not effective if it is given under duress."

(Emphasis added.)

Thus, mistake negates a landowner's consent to trespass only in two situations: (1) where the trespasser knew of the mistake, or (2) where the mistake was induced by the trespasser's misrepresentation. Significantly, the comments to section 892B emphasize that consent is not invalid even when it is based on *mutual* mistake: "The fact that the mistake is mutual rather than unilateral to the plaintiff does not change the result [that consent is valid] so long as the actor does not know that the plaintiff is operating under the mistake." *Restatement* § 892B comment c. "The [trespasser's] own mistake may indeed prevent his conduct from amounting to an intentional tort[.]" *Id.*

In this case, all of the evidence in the record demonstrates that—when plaintiffs consented to construction of the improvements on the north strip of tract 9 and when defendant made those improvements—plaintiffs and defendant all believed, mistakenly, that defendant owned that land. The record contains no evidence that defendant knew that it did not own the land and that plaintiffs were giving consent based only on their mistaken belief that it did.

Nor does the record include any evidence that defendant induced plaintiffs' consent through misrepresentation. True, plaintiffs contend otherwise, asserting that their consent was based on defendant's "false representations" that it owned the land. But no evidence in the record suggests that defendant *knew* that it did not own the north strip at the time that plaintiffs consented or when the improvements were made. Accordingly, defendant's assertions that it did own that land are not "misrepresentations" for the purposes of section 892B—a section that describes the law (at least as it exists in some jurisdictions) that protects people who unknowingly own land against others who would *wrongfully* seek to gain entry through knowing misrepresentations. *See Restatement* § 892B comment d (a trespasser who "is aware that the consent is given under a substantial mistake" is not entitled to rely on that consent because he has "deliberately tak[en] advantage of the other's ignorance"). Indeed, if "misrepresentation" included unknowing, innocent misrepresentations of ownership, it would make no sense for comment c to explain, as it does, that a mutual mistake does not negate

consent "so long as the [trespasser] does not know that the plaintiff is operating under the mistake."

Again, the evidence in the record uniformly demonstrates that both parties were mistaken as to the true ownership of the north strip of tract 9 at the pertinent times. Plaintiffs' consent to defendant's entry on that land therefore is a complete bar to their action for trespass. Because a *prima facie* case for trespass requires evidence of an *unauthorized* entry by defendant, the trial court erred when it denied defendant's motion to dismiss plaintiffs' trespass claim, and we reverse that aspect of the court's judgment. Accordingly, we reverse the trial court's award of attorney fees and costs to plaintiffs. *See* ORS 20.220(3)(a) ("If the appellate court reverses the judgment, the award of attorney fees or costs and disbursements shall be deemed reversed.").

On appeal, reversed and remanded as to plaintiffs' trespass claim and award of attorney fees and costs; otherwise affirmed. On cross-appeal, affirmed.