Argued and submitted June 2, 2017, affirmed October 2, 2019, petition for review denied January 30, 2020 (366 Or 135)

CROWN PROPERTY MANAGEMENT, INC.,
*Plaintiff-Respondent,*

*v.*

MARY ANN COTTINGHAM,
*Defendant-Appellant,*

*and*

ALL OTHERS,
*Defendants.*

Polk County Circuit Court
16LT05786; A162503

450 P3d 979

Defendant appeals a judgment awarding restitution of residential property to plaintiff in an action for forcible entry and detainer, raising two assignments of error. Defendant first contends that the trial court erred in denying her motion for involuntary dismissal under ORCP 54 B(2) because plaintiff's notice of termination of defendant's tenancy for failure to pay rent—which was served on defendant through "nail-and-mail" service—was invalid because plaintiff had failed to prove that the location identified in the nail-and-mail provision in the parties' written rental agreement at which to post notices was available at all hours, as required by ORS 90.155(1)(c). Second, defendant contends that plaintiff waived its right to terminate the rental agreement under an initial termination notice by serving a second termination notice. *Held*: The trial court did not err. As to the first assignment of error, plaintiff proved sufficient facts from which it was reasonable to infer that the location identified in the rental agreement to which tenants could affix notices was available at all hours. As to the second assignment of error, any possible error was harmless.

Affirmed.

Norman R. Hill, Judge.

Matthew G. Shepard argued the cause and filed the brief for appellant.

Michael J. Morris argued the cause and filed the brief for respondent.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Shorr, Judge.

ARMSTRONG, P. J.

Affirmed.

## ARMSTRONG, P. J.

Defendant appeals a judgment awarding restitution of residential property to plaintiff in an action for forcible entry and detainer (FED), raising two assignments of error. Defendant first contends that the trial court erred in denying her motion for involuntary dismissal under ORCP 54 B(2)[1] on the ground that plaintiff's notice of termination of defendant's tenancy for failure to pay rent—which was served on defendant through "nail-and-mail" service[2]—was invalid because plaintiff had failed to prove that the parties' written rental agreement contained a valid nail-and-mail service provision. Second, defendant contends that the court erred in concluding that plaintiff had not waived its right to terminate the rental agreement under an initial termination notice by serving a second termination notice. We conclude that the trial court did not err and affirm.

The following historical facts are not disputed. Defendant entered into a June 2011 lease of an apartment in an apartment complex that plaintiff managed. The lease contained a provision on written notices that authorized nail-and-mail service. That provision stated:

"27. WRITTEN NOTICES: All notices required under this Rental Agreement or state law to be in writing shall be served personally, by first class mail or by first class mail and attachment. If served by first class mail and attachment, a notice from Owner/Agent to Resident shall be deemed served on the day and at the time it is both mailed by first class mail to Resident at the Premises and attached in a secure manner to the main entrance of that portion of the Premises of which Resident has possession. If served by first class mail and attachment, a notice from Resident to Owner/Agent shall be deemed served on the day it is both mailed by first class mail to Owner/Agent at the address set forth on this Rental Agreement and attached in a secure

---

[1] Although defendant moved for a directed verdict, we treat defendant's motion as one for involuntary dismissal under ORCP 54 B(2) because the case was tried to the court rather than a jury. *See, e.g.*, *Marlow v. City of Sisters*, 281 Or App 462, 465, 383 P3d 908 (2016) (explaining that principle).

[2] Nail-and-mail service is a term used to describe the service of written notices between a landlord and tenant by mailing the notice by first-class mail and by attaching a second copy of the notice at a designated location. *See* ORS 90.155(1)(c).

manner to the main entrance of the complex office, if one exists, and if not, to Owner/Agent's location identified on the front of this Rental Agreement. If the main entrance to Owner/Agent's office is located inside a secured building, the notice should be attached to the main entrance of such building. Agent is authorized to accept notices on behalf of Owner."

The record indicates that the apartment complex had an on-site office. Defendant resided in her apartment in the complex until the events giving rise to this case.

Defendant did not make the rent payment that was due on April 1, 2016. On April 29, plaintiff sent defendant a "72-Hour Notice of Tenancy Termination for Nonpayment of Rent" by first-class mail, stating that she had to pay the one month's rent that she owed by 11:59 p.m. on May 3 or her tenancy would automatically terminate without further notice. The notice also was posted on the door to defendant's apartment. Following defendant's failure to pay her rent by the deadline, plaintiff filed its FED complaint on May 9.

Defendant failed to pay the next month's rent that was due on May 1. On May 18, plaintiff mailed a second termination notice to defendant and attached it to defendant's door. That notice stated that defendant owed one month's rent and gave her until 11:59 p.m. on May 22 to pay her rent or the rental agreement would automatically terminate. After defendant failed to pay her May rent by the date given on the second notice, plaintiff amended its FED complaint to include both missed rent payments as grounds for terminating the rental agreement. Throughout the process, defendant made offers to pay either $1 in cash or a $100 money order to satisfy the amount owed. Those payments were rejected by plaintiff.

After plaintiff presented its case in the FED action, defendant moved for involuntary dismissal under ORCP 54 B(2),[3] arguing that plaintiff had failed to meet its *prima facie* burden to show that plaintiff could use nail-and-mail service to give defendant notice of its intention to terminate the rental agreement. According to defendant, although the

---

[3] As explained earlier, see 299 Or App at 554 n 1, defendant moved for a directed verdict, which we treat as a motion for involuntary dismissal.

rental agreement contained a nail-and-mail provision, plaintiff had failed to prove that the provision was valid because plaintiff had failed to introduce evidence that the designated location for tenants to post notices to the landlord was available at all hours, as required by ORS 90.155 (1)(c)(B). The court denied defendant's motion.

In her closing argument, defendant argued that plaintiff had waived its right to terminate the agreement under the initial notice of nonpayment of rent by acting in a manner inconsistent with the premise that the rental agreement had been terminated in accordance with that notice. Specifically, defendant asserted that plaintiff had confirmed that the parties' rental agreement remained in effect after the termination date in the first notice by giving defendant a second notice of plaintiff's intention to terminate the agreement for nonpayment of rent. Plaintiff disagreed, arguing that the second notice for a subsequent failure to pay rent did not waive its right to terminate under the first notice because the second notice fell within the "safe harbor" in ORS 90.414.[4]

The trial court concluded that the second notice did not constitute a waiver of the right to terminate under the first notice but, rather, that the second notice was "ineffective" because the first notice had already terminated the rental agreement. Accordingly, the court entered a judgment of restitution of the premises in favor of plaintiff.

---

[4] ORS 90.414 identifies circumstances in which acts by a landlord that occur after the landlord or tenant has given notice of termination of a tenancy do not waive the landlord's right to terminate the tenancy under the notice and do not reinstate the tenancy. The circumstance on which plaintiff relied at trial is contained in ORS 90.414(1)(c)(B), which provides:

"(1) If a notice of termination has been given by the landlord or the tenant, the following do not waive the right of the landlord to terminate on the notice and do not reinstate the tenancy:

"* * * * *

"(c) If the termination is for cause under ORS 90.392, 90.398, 90.405, 90.630 or 90.632 and proceedings have commenced under ORS 105.105 to 105.168 to recover possession of the premises based on the termination:

"* * * * *

"(B) Service of a nonpayment of rent termination notice under ORS 90.394."

In her first assignment of error, defendant contends that the trial court erred in denying her motion for involuntary dismissal, reprising her argument that plaintiff had failed to establish that nail-and-mail service was valid because plaintiff had failed to prove that the nail-and-mail provision in the rental agreement designated a location for tenants to post notices to the landlord that was available at all hours.[5] When reviewing a trial court's denial of a motion for involuntary dismissal of a plaintiff's claim, we view the evidence and all reasonable inferences that can be made from it in the light most favorable to the plaintiff to determine whether there is sufficient evidence to establish a *prima facie* case on the claim. *See, e.g.*, *Marlow v. City of Sisters*, 281 Or App 462, 468, 383 P3d 908 (2016).

Proof of proper notice is a prerequisite for a plaintiff to prevail on an FED claim. *Leffler v. Wilson*, 94 Or App 411, 413 n 1, 765 P2d 833 (1988), *rev den*, 307 Or 514 (1989). One method of giving notice is through nail-and-mail service. *See* ORS 90.155(1)(c). However, nail-and-mail service can be used to give notice only when (1) a written rental agreement between the parties provides for such service and (2) the provision in the agreement is reciprocal, meaning that it allows both parties to use nail-and-mail service to serve notices on each other. *Id*. The agreement must provide that notices from landlord to tenant be mailed to the

---

[5] The requirements for nail-and-mail service are found in ORS 90.155, which provides, as relevant:

"(1) Except as provided in ORS 90.300, 90.315, 90.425 and 90.675, where this chapter requires written notice, service or delivery of that written notice shall be executed by one or more of the following methods:

"* * * * *

"(c) If a written rental agreement so provides, both first class mail and attachment to a designated location. In order for a written rental agreement to provide for mail and attachment service of written notices from the landlord to the tenant, the agreement must also provide for such service of written notices from the tenant to the landlord. Mail and attachment service of written notices shall be executed as follows:

"* * * * *

"(B) For written notices from the tenant to the landlord, the first class mail notice copy shall be addressed to the landlord at an address as designated in the written rental agreement and the second notice copy shall be attached in a secure manner to the landlord's designated location, which shall be described with particularity in the written rental agreement, reasonably located in relation to the tenant and available at all hours."

address of the property being leased under the rental agreement and attached in a secure manner to the door of the same property. ORS 90.155(1)(c)(A). The provision also must designate an address where the tenant can mail notices to the landlord and a location where the tenant can affix notices, "which shall be described with particularity in the written rental agreement, reasonably located in relation to the tenant and *available at all hours*." ORS 90.155(1)(c)(B) (emphasis added).

When determining whether a nail-and-mail provision adequately allows for reciprocal service, we primarily focus on whether the provision gives the tenant "a clear and effective method * * * to effectuate nail and mail service." *American Property Management Corporation v. Nikaia*, 230 Or App 321, 328, 215 P3d 906 (2009). It is the landlord's responsibility to identify in the rental agreement a location that meets the statutory requirements for tenants to use nail-and-mail service. *Kailash Ecovillage, LLC v. Santiago*, 292 Or App 640, 646, 426 P3d 245 (2018).

Defendant contends, as she did below, that plaintiff failed to prove that the location designated in the rental agreement for notices from tenants to the landlord was available at all hours. We conclude that the evidence admitted at trial is sufficient to survive a motion for involuntary dismissal on that basis. The nail-and-mail service provision in the agreement states that notices from tenants to the landlord may be "mailed by first class mail to Owner/ Agent at the address set forth on this Rental Agreement" and attached "to the main entrance of the complex office." The provision goes on to provide that,

> "[i]f the main entrance to Owner/Agent's office is located inside a secured building, the notice should be attached to the main entrance of such building."

In light of those provisions, it is reasonable to infer that the main entrance to the apartment complex's office is a location at which tenants could attach notices at any time of day. Therefore, viewing the evidence in the light most favorable to plaintiff, plaintiff met its *prima facie* burden to show that the provision in the rental agreement met the requirements for reciprocal nail-and-mail service. Hence, the trial court

did not err in denying defendant's motion for involuntary dismissal.

Defendant's second assignment of error challenges the trial court's determination that plaintiff was entitled to obtain restitution under the first termination notice despite having served a second termination notice. According to defendant, plaintiff waived its right to terminate the rental agreement under the first notice—which stated that the agreement would terminate if defendant did not pay the rent that she owed by 11:59 p.m. on May 3—because the second notice—which was served *after* May 3—represented that the rental agreement remained in effect after May 3 and would terminate on May 22 if defendant failed to pay the rent due. Plaintiff counters that the second notice did not waive any of plaintiff's statutory rights, and that any error in awarding restitution under the first notice was harmless because defendant did not pay the rent owed under either notice.

Properly understood, defendant's second assignment of error, as with her first assignment, is a challenge to the trial court's denial of a motion under ORCP 54 B(2) for involuntary dismissal. Defendant did not make such a motion but, rather, assigns error to the trial court's rejection of the argument that she made in her closing argument about the efficacy of the first notice. When appropriate, we have treated legal arguments made in closing arguments in criminal cases that challenged the state's failure to present sufficient evidence of a necessary element of a crime as motions for judgment of acquittal. *See, e.g.*, *State v. Hawkins*, 280 Or App 26, 29, 380 P3d 979 (2016) (so doing). Similarly, here, defendant contended in her closing argument that plaintiff had failed, as a matter of law, to prove a necessary element of its FED claim—effective notice—and that plaintiff's claim must be dismissed for that reason. We conclude that it is appropriate for us to treat defendant's closing argument on that legal issue as a motion for involuntary dismissal, to which we turn.

We conclude that any error that the trial court may have made in resolving whether plaintiff had waived its right to terminate under the first notice was harmless.

Plaintiff alleged two grounds on which to terminate defendant's rental agreement and reclaim possession of her apartment: defendant's failure to pay the rent due in April that was the subject of the first notice, and her failure to pay the rent due in May that was the subject of the second notice. Defendant did not dispute that she had breached the rental agreement by failing to pay the May rent, that that breach and the notice of it were properly before the court, and that that breach was an adequate ground on which to terminate the rental agreement and restore the premises to plaintiff. We conclude, therefore, that the trial court did not err in denying defendant's motion for involuntary dismissal.

Affirmed.